1

2

3

4

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10    KENNY LYNN WARREN,

11              Petitioner,                    No. 2:10-cv-2120 MCE EFB P

12        vs.

13    DOMINGO URIBE, JR.,                      ORDER AND
                                               FINDINGS & RECOMMENDATIONS
14              Respondent.
      _____/

15

16          Petitioner is a state prisoner without counsel proceeding with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2006 judgment of conviction

18    entered against him in the Butte County Superior Court on two counts of assault on a peace

19    officer with a semiautomatic weapon while personally discharging a firearm, one count of false

20    imprisonment by violence while personally using a firearm, one count of child endangerment,

21    and one count of possession of a controlled substance.  Petitioner seeks relief based on the

22    following claims:  (1) the trial court erred in denying his motion to suppress the evidence against

23    him; (2) the prosecutor presented insufficient evidence to support his convictions for assault on a

24    peace officer because he failed to prove the officers were lawfully performing their duties; (3)

25    the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to jury trial, proof

26    beyond a reasonable doubt, and due process in failing to stay his sentence for false imprisonment

of one of the officers, in light of the fact that he received a sentence for assault of that same officer; (4) the trial court erred in denying his request for a continuance of the sentencing hearing; (5) he received ineffective assistance of trial and appellate counsel; and (6) the prosecutor committed misconduct in introducing testimony that he should have known was false. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

Petitioner has also filed a "motion for interrogatories," a "motion for discovery," a "motion to expand the record," and a "motion for clarification."  Those motions will be addressed below.

## I.   Background[1]

A jury found defendant Kenny Lynn Warren guilty of two counts of assault on a peace officer with a semiautomatic firearm while personally discharging a firearm, one count of false imprisonment by violence while personally using a firearm, one count of child endangerment, and one count of possession of a controlled substance.  He pled no contest to being a felon in possession of a firearm.  The court sentenced him to 44 years 8 months in prison.

* * *

**FACTUAL AND PROCEDURAL BACKGROUND**

At the time of trial, defendant and his wife P. had been married for 14 years and had been a couple for 25 years.  They have two children, including one teenaged son K.

In May 2005, P. had a temporary restraining order against defendant that required he stay at least 100 yards away from her and move out of their apartment.  In early June 2005, the court dissolved the restraining order because neither defendant nor P. appeared at a court hearing.  Still, P. changed the locks on the apartment because she and defendant were having marital problems.

On June 13, 2005, K. woke P. to tell her there was a broken window in the kitchen.  Defendant then came into P.'s bedroom

_____

[1]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

2

and demanded to know why she had changed the locks.  P. called 911.

About 1:55 a.m. that morning, Chico Police Officer Jeff Durkin responded to a domestic disturbance call.  The dispatcher said that a male was breaking items inside the apartment and there might be a restraining order violation.  Officers Robert Ponce and Matthew Nowicki also responded to the call.

Officer Durkin was the first officer to arrive at the apartment complex.  He heard a man and a woman arguing, saw a door with a broken window pane, and came across a woman (P.) in the apartment complex corridor who seemed distraught and who told the officer in a low agitated voice that "he was inside the residence breaking items and she wanted him to leave."  Officer Durkin went to the front of the apartment and through the open door saw a man (defendant) standing inside the living room.  Defendant was agitated and "moving around quite a bit."  While using profanity, he refused the officer's repeated requests to come outside and talk with him about "the alleged domestic disturbance."

Officer Durkin decided to go inside the apartment and detain defendant.[2]  When the officer stepped inside, defendant ran out of the living room.  Officers Durkin and Nowicki chased defendant down a hallway and stood at the threshold of a poorly-lit bedroom in which defendant was standing.  Defendant appeared agitated and aggressive and was in a "fighting stance" "directed towards [the officers]."  He had "his fists out in front of him and a bladed sort of stance," looking as though he was "preparing for [the officers] to engage in some kind of physical type altercation."  Officer Durkin went for his pepper spray but then heard Officer Nowicki say he was going to use his Taser gun.  Defendant reached under his shirt for a handgun that was in the waistband of his pants.

Officer Durkin yelled "gun, gun, gun" and ran into the bathroom for cover.  Officer Nowicki retreated toward the door.  When Officer Durkin reached the bathroom, defendant fired several shots in rapid succession from the bedroom area.  Officer Durkin returned fire and radioed for help.

Officer Nowicki decided to re-enter the apartment with Officer Ponce.  As they ran inside, defendant fired directly at them from the bedroom.  Both officers "hit the ground."  Officer Nowicki fired four shots, temporarily stopping defendant's fire.  Officer Nowicki pointed a flashlight toward the bedroom door.  Defendant fired another shot toward the officers.

---

[2]  We will recount in greater detail the facts leading up to the entry into the apartment in part I of the Discussion.

3

> Meanwhile, K. escaped from the apartment through a window. Not realizing K. had escaped, defendant called out to K. and when his son did not respond, defendant yelled at the officers that they had killed K. Defendant told them to "'Bring it on,'" because he had "'two more clips.'" All three officers "'hunkered down.'"

> Officer Durkin, who still was in the bathroom, struck up conversation with defendant, who remained in the bedroom. When the officer told defendant that his son was okay, defendant and Officer Durkin developed a "rapport." During their four-hour conversation, defendant told the officer he would free him in exchange for a beer or soda. The officers told defendant they could not do the exchange "right then."

> Eventually, a hostage negotiation team was called in, tear gas deployed, and Officer Durkin was able to escape by "thr[owing] [him]self outside the window." After a long struggle, defendant was detained.

Dckt. No. 40-1 at 1-5.

After petitioner's judgment of conviction was affirmed by the California Court of Appeal, he filed a petition for review in the California Supreme Court. Resp't's Lodg. Doc. No. 14. That petition was summarily denied by order dated October 22, 2008. Dckt. No. 1 at 99.

On December 27, 2009, petitioner filed a habeas petition in the California Supreme Court. Resp't's Lodg. Doc. No. 16. That petition was denied on July 14, 2010, with a citation to *In re Robbins*, 18 Cal.4th 770, 780 (1998). Resp't's Lodg. Doc. No. 17.

Petitioner commenced federal habeas corpus proceedings by filing the instant petition in this court on August 10, 2010. Dckt. No. 1. Respondent contends that the federal petition is untimely and should be dismissed. Dckt. No. 40 at 10, 16-17. The court rejects this argument for the reasons set forth in the September 1, 2011 findings and recommendations. *See* Dckt. No. 27.

## II.   Analysis

### A.   Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28

4

1    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

2    application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

3    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

4    2000).

5        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

6    corpus relief:

7                 An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall

8                 not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

9                 claim -

10                 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

11                 determined by the Supreme Court of the United States; or

12                 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

13                 State court proceeding.

14        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

15    holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

16    *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

17    (2000).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

18    clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d

19    at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

20        A state court decision is "contrary to" clearly established federal law if it applies a rule

21    contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

22    precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

23    Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

24    the writ if the state court identifies the correct governing legal principle from the Supreme

25    ////

26    ////

1   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]

2   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

3   F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

4   simply because that court concludes in its independent judgment that the relevant state-court

5   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

6   application must also be unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v.*

7   *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

8   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

9   the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

10  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

11  of the state court's decision."  *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

12  (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

13  condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

14  state court's ruling on the claim being presented in federal court was so lacking in justification

15  that there was an error well understood and comprehended in existing law beyond any possibility

16  for fairminded disagreement."  *Richter*,131 S. Ct. at 786-87.

17      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18  court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

19  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

20  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

21  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

22  considering de novo the constitutional issues raised.").

23  ////

---

25  [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
26  384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

**B. Petitioner's Claims**

**1. Motion to Suppress**

In petitioner's first ground for relief, he claims that the trial court erred in denying his motion to suppress the evidence against him. Specifically, he argues that there were "no exigent circumstances justifying the [officers'] warrantless entry" into his apartment. Dckt. No. 1 at 5, 17-25. The California Court of Appeal denied this claim, finding that the officers were justified in entering petitioner's apartment without a warrant. Dckt. No. 40-1 at 10-12.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). There is no evidence before the court that petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claims in state court. On the contrary, he filed and litigated a motion to suppress in the trial court. *See* Clerk's Transcript on Appeal (CT) at 213-34; Reporter's Transcript on Appeal (RT) at 9-70. Under these circumstances, petitioner's Fourth Amendment claim is barred in this federal habeas proceeding. *Stone*, 428 U.S. at 494.[4]

**2. Insufficient Evidence**

In his second ground for relief, petitioner claims that insufficient evidence supported his convictions for assault on a peace officer because the prosecution failed to prove that the officers were lawfully performing their duties at the time of the events in question. Dckt. No. 1 at 5, 26-29.

---

[4] In connection with his claims of ineffective assistance of counsel, discussed below, petitioner argues that he did not have a full and fair opportunity to litigate his Fourth Amendment claims in state court because his trial counsel rendered ineffective assistance in his handling of the motion to suppress. This argument is more properly considered in connection with petitioner's claims of ineffective assistance of counsel. Regardless of the performance of his trial counsel, there is no evidence before this court that the state denied petitioner an opportunity to challenge the warrantless entry into his apartment. Accordingly, under *Stone*, petitioner's Fourth Amendment claim is not cognizable in federal habeas corpus.

**a.  State Court Decisions**

The California Court of Appeal denied this claim on state law grounds, reasoning as follows:

> Defendant contends the People presented insufficient evidence to support his convictions for assault on a peace officer because they failed to prove the officers were lawfully performing their duties. While part of his contention is based on the argument that the officers lacked exigent circumstances for the warrantless entry, an argument we have already rejected,[5] another part of his contention is based on an argument that the officers exceeded the scope of their duties once they entered the apartment.  Here, we address this latter contention.

> Defendant's argument that the officers exceeded the scope of their duties once they entered the apartment is based on the fact that Officer Durkin attempted to use pepper spray on defendant and Officer Nowicki attempted to use his Taser gun on defendant even though, according to defendant, he had "taken a defensive position" and had not "initiated any physical contact with the officers."

> Defendant misunderstands the scope of our review on appeal. "When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule.  We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense."  (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859.) Whether the jury could have reached a different conclusion is not for us to decide.  (*People v. Bean* (1988) 46 Cal.3d 919, 932-933; People v. Daya (1994) 29 Cal.App.4th 697, 702.)

> Applying these rules, we find substantial evidence that the officers were engaged in the performance of their duties when they attempted to use their pepper spray and Taser gun on defendant. When Officer Durkin stepped into the apartment, defendant ran out of the room and out of view.  Officers Durkin and Nowicki chased him down a hallway and stood at the threshold of a poorly-lit bedroom in which defendant was now standing.  Defendant was agitated and aggressive and was in a "fighting stance" directed toward the officers in which he had "his fists out in front of him and a bladed sort of a stance" looking as though he was "preparing

---

[5]  The evidence at the suppression hearing regarding entry into the apartment paralleled in all material respects the evidence at trial.

for [the officers] to engage in some kind of physical type altercation." It appeared as though defendant was not going to comply with the officers' orders. Given the small space in which the officers were standing and their unfamiliarity with the poorly-lit bedroom, Officer Durkin went for his pepper spray to detain defendant. He then heard Officer Nowicki announce that he was going to use his Taser gun. At this point, defendant went for his gun.

Officer Durkin explained that the police department's written policy on chemical agents prohibited officers from using pepper spray when taking into custody a "passively resisting suspect" but here defendant was "actively resisting" because he was "running away, agitated, showing a fighting stan[ce]." Officer Nowicki explained that the police department's written policy on Taser guns allowed officers to use them on suspects when their behavior posed a risk of injury to themselves, others, or the officers. Here, the evidence amply demonstrates that the officers' actions in simply pulling out their pepper spray and Taser gun were well within these policy guidelines. The officers were faced with an agitated and aggressive suspect involved in a domestic violence incident in which a glass pane had been broken. He had just fled into a poorly-lit bedroom, had assumed a fighting stance, and was not complying with any of the officers' orders. The officers did not act unreasonably in simply drawing their pepper spray and Taser gun.[6] The evidence to which defendant points from which he believes a jury could have reached an opposite conclusion is not germane to our analysis on a substantial evidence review.

Dckt. No. 40-1 at 12-15.

In connection with its decision on petitioner's motion to suppress, the California Court of Appeal also concluded that exigent circumstances justified the officers' entry into petitioner's apartment without a warrant. The court reasoned as follows:

**Exigent Circumstances Justified The Warrantless Entry Into The Apartment**

Although a warrantless entry of a residence is presumptively unreasonable, the federal Constitution allows warrantless entry under certain types of exigent circumstances. (*Mincey v. Arizona* (1978) 437 U.S. 385, 393-394 [57 L.Ed.2d 290, 300-301].) Exigent circumstances include emergency situations requiring

---

[6] Even defendant appears to acknowledge that the officers' actions were reasonable in that he argues that " had they actually deployed their weapons they would have been using excessive and unreasonable force." (Italics added.)

swift action to prevent physical harm to a person, serious property damage, the imminent escape of a suspect, or the destruction of evidence.  (*People v. Ramey* (1976) 16 Cal.3d 263, 276.)  Exigent circumstances justifying a warrantless entry into a residence have been found in domestic disturbance cases (*see, e.g.*, *People v. Frye* (1998) 18 Cal.4th 894, 989-990 (*Frye*); *People v. Wilkins* (1993) 14 Cal.App.4th 761, 772 (*Wilkins*)), although there is no "domestic violence exception to the warrant requirement" (*People v. Ormonde* (2006) 143 Cal.App.4th 282, 295 (*Ormonde*)).  Citing (among others) *Frye* and *Wilkins*, the People argue that the warrantless entry here was justified.

In *Frye*, the California Supreme Court upheld the warrantless entry into an apartment in the early morning where the victim appeared beaten, stepped out of the apartment, and identified the defendant, who was still inside, as her assailant.  (*Frye, supra*, 18 Cal.4th at pp. 989-990.)  The court explained that in light of the facts then known to the officers, "they could reasonably have concluded that immediate action was necessary."  (*Id.* at p. 989.)  Had the officers "left the scene to obtain a warrant, there was a significant risk that [the victim] would have suffered additional harm."  (*Ibid.*)  Moreover, "[e]ven if several officers had remained on the premises with [the victim] while a warrant was being secured, the likely delay could have posed a safety risk to not only [the victim] but the remaining officers as well."  (*Id.* at pp. 989-990.)

In *Wilkins*, this court upheld the warrantless entry into a house where the officers were summoned after midnight in response to a "domestic dispute" and "found the victim crying uncontrollably and learned she had been assaulted and injured by the defendant." (*Wilkins, supra*, 14 Cal.App.4th at pp. 767, 772.)  In upholding the entry, this court explained, "[t]he victim was outside the house and obviously in need of shelter" and it was reasonable for the officers to conclude that the victim's reentry into the home or even her continuing presence on the premises outside the home would spark further violence by the defendant.  (*Id.* at p. 772.)  "Furthermore, under these circumstances, the officers were not constrained to delay until an arrest warrant could be obtained.  Given the time of night, the securing of a warrant would necessarily have occasioned some delay and during this period the victim would have been vulnerable to further risk of physical harm."  (*Ibid.*)  Therefore, "[t]he risk of imminent violence resulting in further physical harm to the victim was an exigent circumstance requiring immediate action."  (*Ibid.*)

Distinguishing these two cases, defendant relies primarily on one case in which the court held there were no exigent circumstances justifying entry into the apartment.  (*Ormonde, supra*, 143 Cal.App.4th at p. 291.)  In *Ormonde*, the court found that the seriousness of the offense for which the suspect was under investigation (domestic battery) could not by itself give rise to an

exigency.  (*Ibid.*)  It found no exigency because the arrest was occurring outside the apartment, the assailant's wife was safely away from the premises, and the officers did not articulate any reason to believe other victims or suspects were involved in the battery or were inside the apartment.  (*Ibid.*)

Contrary to defendant's argument that this case is like *Ormonde*, we agree with the People that this case is more like *Frye* and *Wilkins*, and the facts here justified entry into the apartment based on exigent circumstances.  The officers were responding to an early morning 911 domestic disturbance call that a man had been breaking items inside the apartment and there might have been a restraining order.  (*See Wilkins, supra*, 14 Cal.App.4th at p. 772.)  When Officer Durkin arrived at the apartment complex, he was able to confirm that there was an ongoing domestic disturbance because he heard what sounded like a man and woman arguing and saw a broken glass pane.  While the officer did not encounter a physically battered victim, he did encounter a woman who was agitated and frightened who stood close to him and whispered that "he" was inside breaking objects, and she wanted him to leave because he was not supposed to be there.  At least some of what P. said was corroborated in that the officer had seen a broken glass pane and encountered a "highly agitated" man (defendant) inside the apartment who was uncooperative with the officer's request to come outside and used profanity when responding to the officer. In light of these facts, the officers reasonably concluded that immediate action was necessary.  (*See Frye, supra*, 18 Cal.4th at p. 989.)

Unlike *Ormonde*, the officers here did not base their decision to enter the apartment on the fact that this was a domestic disturbance call.  (*See Ormonde, supra*, 143 Cal.App.4th at p. 291.)  To the contrary, Officer Durkin specifically stated he wanted to talk with defendant outside the apartment for officer safety reasons given that responding to domestic violence calls was one of the more difficult situations in which to be involved.  It was defendant who did not comply with the officer's request to come out and so the officer could not arrest him in front of the apartment.  If the officer had left the scene to get a warrant, there would have been some delay because of the time of day (*see Wilkins, supra*, 14 Cal.App.4th at p. 772), and in that delay they risked that defendant would remain in the apartment and would continue destroying it. Even if some officers could have remained at the scene, they risked violence directed at P. and themselves given defendant's "highly agitated" state, his use of profanity toward the officers, and his refusal to come out of the apartment.  It would have been unreasonable for the officers to either wait to get a warrant or leave the scene.  Under these circumstances, we agree with the trial court that the exigent circumstances exception to the warrant requirement applied, and the evidence against defendant discovered after the search did not have to be suppressed.

1   *Id.* at 8-12.

2                    **b.  Applicable Legal Standards**

3          The Due Process Clause "protects the accused against conviction except upon proof

4   beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

5   charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

6   conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

7   rational trier of fact could have found the essential elements of the crime beyond a reasonable

8   doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under

9   *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a

10  reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443

11  U.S. at 318).

12         In conducting federal habeas review of a claim of insufficient evidence, "all evidence

13  must be considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*, 651 F.3d

14  1112, 1115 (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences

15  to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

16  inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct.

17  2060, 2064 (2012) ( per curiam ) (citation omitted).  "'Circumstantial evidence and inferences

18  drawn from it may be sufficient to sustain a conviction.'"  *Walters v. Maass*, 45 F.3d 1355, 1358

19  (9th Cir.1995) (citation omitted).

20          "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

21  the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

22  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas

23  court must find that the decision of the state court rejecting an  insufficiency of the evidence

24  claim reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of

25  the case.  *Ngo*, 651 F.3d at 1115; *Juan H.*, 408 F.3d at 1275 & n.13.  Thus, when a federal

26  habeas court assesses a sufficiency of the evidence challenge to a state court conviction under

1  AEDPA, "there is a double dose of deference that can rarely be surmounted."  *Boyer v. Belleque*,

2  659 F.3d 957, 964 (9th Cir. 2011).  The federal habeas court determines sufficiency of the

3  evidence in reference to the substantive elements of the criminal offense as defined by state law.

4  *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.  Pursuant to California law, in order to

5  find a defendant guilty on a charge of assaulting a peace officer, the jury must find that "[w]hen

6  the defendant acted, the person assaulted was lawfully performing (his/her) duties as a peace

7  officer.  CT at 663; CALCRIM No. 860.

8                                           **c. Analysis**

9          After reviewing the state court record in the light most favorable to the jury's verdict, this

10  court concludes that there was sufficient evidence introduced at petitioner's trial from which a

11  rational trier of fact could have found beyond a reasonable doubt that Officers Durkin and

12  Nowicki were acting within the scope of their duties both before and after their entry into

13  petitioner's apartment.  For the reasons expressed by the California Court of Appeal, there was

14  evidence from which the jury could have found that exigent circumstances supported the

15  officers' initial entry into the apartment, and that the officers' actions in drawing their pepper

16  spray and Taser gun after they entered the apartment were reasonable in light of the

17  circumstances surrounding the altercation.  This is so regardless of the fact that there might have

18  been other trial evidence to support petitioner's argument that the officers were acting outside

19  the scope of their duties.  The question in this federal habeas action is not whether there was

20  evidence from which the jury could have found for the petitioner on this issue.  Rather, in order

21  to obtain federal habeas relief on this claim, petitioner must demonstrate that the state courts'

22  denial of relief with respect to his insufficiency of the evidence arguments was an objectively

23  unreasonable application of the decisions in *Jackson* and *Winship* to the facts of this case.

24  Petitioner has failed to make this showing, or to overcome the deference due to the state court's

25  findings of fact and its analysis of this claim.  Accordingly, he is not entitled to federal habeas

26  relief.

### 3. Improper Sentence

In his third ground for relief, petitioner raises several challenges to his sentence.  First, citing only California law, petitioner claims that the trial court violated Cal. Penal Code § 654 in failing to stay his sentence on Count 3 (false imprisonment of Officer Durkin by violence), because it was committed as part of the same course of conduct, and with the same intent, as the assault charged in Count 1 (assault on Officer Durkin).  Dckt. No. 1 at 30-33.  Specifically, petitioner argues that "Section 654 precludes multiple punishment for a single act or omission where the act or omission constitutes more than one offense."  *Id.* at 31.

The California Court of Appeal denied this sentencing claim, reasoning as follows:

> Defendant contends the trial court should have stayed the sentence for false imprisonment of Officer Durkin in light of his sentence for assault of Officer Durkin because he committed those crimes during a single course of conduct in which his sole objective was to "resist[ ] the officers' attempt to remove him from his home ." We disagree.

> The trial court refused to stay the sentence for false imprisonment because "the following crimes and their objectives were predominantly independent of each other.  The crimes . . . involve separate acts of violence or threats of violence."

> "A defendant cannot be punished multiple times for convictions that arise out of 'an indivisible transaction' and have a 'single intent and objective.' [Citation.]  'A trial court's . . . finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.'"  (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.)

> Here, the trial court's finding that defendant had a separate intent and objective for the assault of Officer Durkin and a separate intent and objective for the false imprisonment of Officer Durkin is supported by substantial evidence.

> Defendant shot at Officer Durkin after the officer followed him to the bedroom and drew his pepper spray.  It is a reasonable inference from this evidence that defendant's intent in assaulting

> Officer Durkin with the gun was to thwart the officer's attempt to detain him and talk about the domestic disturbance incident.

////

1

2     In contrast, defendant falsely imprisoned Officer Durkin in the
      bathroom for approximately four hours after he had shot at the
      officers and had refused attempts by the hostage negotiators to
3     secure Officer Durkin's release.  It is a reasonable inference from
      these facts that defendant committed the false imprisonment to
      avoid being arrested for shooting at the officers.
4

5     The evidence we have just recounted is sufficient to support the
      trial court's finding of distinct intents and objectives for the assault
      and false imprisonment of Officer Durkin.
6

7     Dckt. No. 40-1 at 16-18.

8          Habeas corpus relief is unavailable for alleged errors in the interpretation or application

9     of state sentencing laws by either a state trial court or appellate court.  "[A] federal court is

10    limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

11    States."  *Estelle v. McGuire*, 502 U.S. at 67-68.  Further, "[s]tate courts are the ultimate

12    expositors of state law," and a federal habeas court is bound by the state's construction except

13    when it appears that its interpretation is an obvious subterfuge to evade the consideration of a

14    federal issue.  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  State sentencing courts have wide

15    latitude in their decisions with regard to punishment.  *Brothers v. Dowdle*, 817 F.2d 1388, 1390

16    (9th Cir. 1987).  So long as a state sentence "is not based on any proscribed federal grounds such

17    as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the

18    penalties for violation of state statutes are matters of state concern."  *Makal v. State of Arizona*,

19    544 F.2d 1030, 1035 (9th Cir. 1976).

20         Petitioner's challenges to his sentence were denied by the California Court of Appeal on

21    state law grounds in a thorough and reasoned opinion, set forth above.  The state court's decision

22    that petitioner's sentence did not violate state law or the state constitution, derived from its

23    analysis of state law, is binding on this court.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)

24    ("federal habeas corpus relief does not lie for errors of state law . . . .").  Further, there is no

25    evidence the state failed to abide by its own statutory commands or that petitioner's sentence

26    ////

16

was imposed in violation of due process.  Accordingly, petitioner is not entitled to relief on this

sentencing claim.

Citing *Cunningham v. California*, 549 U.S. 270 (2007), petitioner also claims that the

trial court's finding that he had separate objectives in the commission of the offenses charged in

counts 1 and 3 violated his Sixth Amendment right to a jury trial.  Dckt. No. 1 at 30, 33-35.  He

argues, "the jury instead of the trial judge [must] make the determination whether a defendant

committed offenses with multiple objectives and thus is susceptible to consecutive, rather than

concurrent sentences for this course of criminal conduct."  Dckt. No. 1 at 34.

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant contends the trial court's finding that he had separate
> intents and objectives in assaulting and falsely imprisoning Officer
> Durkin must be reversed because this type of judicial fact findings
> violates his federal constitutional rights.  We disagree.
>
> In *[People v.]Black*, the California Supreme Court held that the
> determination whether two or more sentences should be served
> consecutively is a "'sentencing decision[ ] made by the judge after
> the jury has made the factual findings necessary to subject the
> defendant to the statutory maximum sentence on each offense' and
> does not 'implicate[ ] the defendant's right to a jury trial on facts
> that are the functional equivalent of elements of an offense.' "
> (*Black, supra*, 41 Cal.4th at p. 823.)
>
> This holding applies equally to a court's decision not to stay a
> sentence under Penal Code[7] section 654.  This statute "is not a
> mandate of constitutional law.  Instead, it is a discretionary benefit
> provided by the Legislature to apply in those limited situations
> where one's culpability is less than the statutory penalty for one's
> crimes.  Thus, when section 654 is found to apply, it effectively
> 'reduces' the total sentence otherwise authorized by the jury's
> verdict.  The rule of *Apprendi [ v. New Jersey* (2000) 530 U.S.
> 466, 490 [147 L.Ed.2d 435, 455], that any fact that increases the
> penalty for a crime beyond the prescribed statutory maximum for
> the crime must be submitted to a jury and proved beyond a
> reasonable doubt], however, only applies where the nonjury factual
> determination increases the maximum penalty beyond the statutory
> range authorized by the jury's verdict." (*People v. Cleveland*
> (2001) 87 Cal.App.4th 263, 270.)

_____

[7] All further statutory references are to the Penal Code unless otherwise indicated.

17

1

> Defendant is wrong that federal precedent such as *Apprendi*
> requires a jury rather than the court to make a determination of
> intent and objective.  Section 654 "does not contain the 'maximum
> penalty' for any particular crime.  The 'maximum penalty'
> discussed in *Apprendi* pertains to the specific offenses at issue;
> *Apprendi* is relevant only where a judge-made factual
> determination increases the maximum statutory penalty for the
> particular crime or crimes." (*People v. Cleveland, supra*, 87
> Cal.App.4th at pp. 270-271.)  These rules remain intact and we
> will continue to follow them.

Dckt. No. 40-1 at 18-20.

A criminal defendant is entitled to a trial by jury and to have every element necessary to

sustain his conviction proven by the state beyond a reasonable doubt.  *U. S. CONST. Amends.* V,

VI, XIV.  To that end, in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States

Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact

other than a prior conviction that "increases the penalty for a crime beyond the prescribed

statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt."

Similarly, in *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), the Supreme Court decided

that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt

any fact that increases the statutory maximum sentence, unless the fact was admitted by the

defendant or was based on a prior conviction.  And in *Cunningham v. California*, 549 U.S. 270

(2007), the Supreme Court held that California's Determinate Sentencing Law (DSL) violates a

defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based

on facts found by the court rather than by a jury.  However, in *Oregon v. Ice*, 555 U.S. 160

(2009), the United States Supreme Court held that judges have discretion to determine whether

sentences are imposed consecutively or concurrently under the rules announced in *Apprendi* and

*Blakely*.  The Court found that "[t]he decision to impose sentences consecutively is not within

the jury function that 'extends down centuries into the common law.'"  *Id.* at 717 (quoting

*Apprendi*, 530 U.S. at 477).  Instead, "specification of the regime for administering multiple

sentences has long been considered the prerogative of state legislatures."  *Id.*

18

Pursuant to the decision of the United States Supreme Court in *Ice*, the Sixth Amendment did not prohibit petitioner's sentencing judge from finding the facts necessary to support the imposition of consecutive, rather than concurrent, sentences. *Id.* at 716-19.[8]  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

### 4. Continuance of Sentencing Hearing

In his next ground for relief, petitioner claims that the trial judge violated his federal constitutional right to the assistance of counsel "of one's own choosing" when he denied petitioner's motion for a continuance of the sentencing hearing in order to give him time to seek new private counsel, or to obtain another appointed counsel, for the purpose of filing a motion for new trial.  Dckt. No. 1 at 36-42.  Petitioner complains that the trial court made no attempt to ascertain whether he would be able to obtain new counsel within a reasonable time.  *Id.*  He argues, "it was not a situation where a delay would inconvenience witnesses, or cause an unreasonable disruption to the judicial process."  *Id.* at 40-41.  Petitioner also contends that the trial court denied his motion for a continuance, in part, on the erroneous belief that petitioner could renew his request for a new trial after his sentence had been imposed.  *Id.* at 41.

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant contends the court violated his constitutional rights when it denied him a continuance made on the date set for sentencing (May 31, 2006) to retain new private counsel or to appoint him counsel (in the event he lacked funds) so that new counsel could file a motion for new trial.  By the time of defendant's request, the sentencing hearing had already been continued once (on May 10) for 21 days so the probation department could prepare its report.  According to the probation report prepared on May 22, defendant said on May 1 that "his family [wa]s in the process of hiring a new attorney, as it w[as] his intention to file a Motion for a New Trial ."

---

[8] Applying *Ice* in this case does not violate the non-retroactivity principle set forth in *Teague v. Lane*, 489 U.S. 288 (1989) because the rule set forth in *Ice* is an "old rule" that is dictated by historical practice and precedent. *See Blanco v. Almager*, No. EDCV 07-346-RSWL (MAN), 2011 WL 4579142, at *23 n.20 (C.D. Cal., June 6, 2011); *Miers v. Mendoza-Powers*, No. 2:07-CV-4410FVS, 2010 WL 3619458, at **14 -15  (E.D. Cal., Sept. 13, 2010).

At the sentencing hearing, the court asked for the prosecutor's "position," to which he responded, "it's too little too late."  The prosecutor explained that it would be "delaying justice" to allow defendant more time to hire a new attorney when he had tried unsuccessfully for four weeks.

When the court asked defendant if he "ha[d] anything [he] want[ed] to tell [the court] directly on that point," defendant responded as follows:  "Yes, I believe I have very good grounds to file a motion for new trial, including the fact that one of my jurors was in custody the same time that I was in the past, and but not limited to that and at this point, if I cannot get a continuance to hire a lawyer to file a motion for new trial, can I dismiss my counsel and have one appointed along with a new investigator[?]"

The court denied defendant's motion.  The court explained that this was a "balancing issue" and based on the court's review and observation of the trial, it did not see "any viable grounds" for a motion for new trial.  As we will explain, this ruling was well within the court's discretion and did not violate defendant's constitutional rights.

Generally, a trial court has discretion to decide whether to grant a continuance to allow a defendant to retain an attorney of his choosing.  (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 850.)  Once a continuance has been denied, the burden is on the defendant to establish an abuse of that discretion.  (*People v. Strozier* (1993) 20 Cal.App.4th 55, 60.)  In determining whether the denial was so arbitrary as to deny due process, we look to the circumstances of each case, paying particular attention to the reasons presented to the trial court at the time the request was denied.  (*People v. Courts* (1985) 37 Cal.3d 784, 791.)

Here, defendant has not carried his burden to demonstrate the court abused its discretion in denying the continuance or that the court's decision was arbitrary.  The court engaged the parties in an extended discussion about whether to allow the continuance.  It took into account the prosecutor's concerns that the sentencing hearing had already been delayed once (albeit at the probation department's request) and that defendant had been trying unsuccessfully to hire new counsel for approximately one month.  When asked by the court if he "ha[d] anything . . . to tell [the court] directly on that point," defendant did not explain why he had been unsuccessful in hiring new counsel during that time.  Although defendant believed he had "very good grounds to file a motion for new trial," the court was in a position to assess these preliminary claims as it had sat through trial and had not observed anything during that time that might give rise to the filing of the motion.  Of course, if there were something outside the record that would give rise to such a claim, the court's ruling would not have precluded defendant from filing a motion for habeas corpus to

20

1         challenge his confinement. On this record, there was no error,
constitutional or otherwise, in the court's denial of defendant's

2         request for a continuance.[9]

3  Dckt. No. 40-1 at 23-25.

4       The United States Supreme Court has held that "broad discretion must be granted trial

5  courts on matters of continuances; only unreasoning and arbitrary 'insistence upon

6  expeditiousness in the face of a justifiable request for delay' violates the right to assistance of

7  counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589

8  (1964)). "There are no mechanical tests for deciding when a denial of a continuance is so

9  arbitrary as to violate due process." *Ungar*, 376 U.S. at 589. Rather, "the answer must be found

10  in the circumstances present in every case, particularly in the reasons presented to the trial judge

11  at the time the request is denied." *Id.* It is well-established that a trial court is entitled to "wide

12  latitude in balancing the right to counsel of choice against the needs of fairness, and against the

13  demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (internal

14  citation omitted). *See also United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002) ("A

15  ////

16

17         [9] Despite this record, defendant complains that the court's ruling was based in part on an "erroneous view of the law regarding motions for a new trial." His complaint is directed at a

18  statement made by the court that it believed it could "go ahead with sentencing today and reserve jurisdiction" under "1107 time to recall a witness" so that if defendant in fact wished to pursue a new trial motion, the court would "surely consider that."

19

20         Both parties on appeal agree that the court was likely referring to section 1170. Subdivision (d) of that section allows the court "within 120 days of the date of commitment on its own motion" to "recall the sentence and commitment previously ordered and resentence the

21  defendant in the same manner as if he or she had not previously been sentenced . . . ."

22         Despite section 1170, "The Penal Code does not authorize the court to hear and grant a motion for a new trial after judgment in a criminal proceeding." (*People v. Grake* (1964) 227

23  Cal.App.2d 289, 292.) It is not necessary that we determine whether the court misunderstood this point of law because the record makes clear that the court would have denied the motion

24  anyway. The court explained that its decision was a "balancing issue," in which it considered that there were no viable grounds for a new trial based on the court's "review" and "attendance at

25  the trial" and the fact that sentencing had been continued once before. It was on these factors that the court felt "comfortable proceeding to sentencing" and denying defendant's request for a

26  continuance.

1  criminal defendant's exercise of [his] right [to counsel of choice] cannot unduly hinder the fair,

2  efficient and orderly administration of justice.").

3       In the context of federal criminal trials, when a decision to grant or deny a continuance

4  implicates a defendant's Sixth Amendment right to counsel a court must balance several factors

5  to determine if the denial was "'fair and reasonable.'"   *United States v. Studley*, 783 F.2d 934,

6  938 (9th Cir. 1986) (quoting *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir.1979) (per

7  curiam)).  These factors include: (1) whether the continuance would inconvenience witnesses,

8  the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether

9  legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5)

10 whether a denial would prejudice the defendant.  *Id.*  "[A] court must be wary against the 'right

11 of counsel' being used as a ploy to gain time or effect delay."  *United States v. Thompson*, 587

12 F.3d 1165, 1174 (9th Cir. 2009) (citation omitted).

13      Here, the trial court did not violate petitioner's Sixth Amendment right to counsel by

14 denying his motion for continuance.  As noted by the California Court of Appeal, the trial court

15 did not summarily reject petitioner's request, but carefully considered whether the granting of a

16 continuance was appropriate.  Petitioner had already been afforded one month to find new

17 counsel but had failed to do so, and he did not explain the reasons for this failure when asked by

18 the trial judge whether he had anything to say on that subject.  The only comment petitioner

19 made to the court was that he believed he had grounds for a motion for new trial.  However,

20 other than making a vague allegation about another juror, petitioner was unable to articulate any

21 substantive reasons to hold a new trial.  Under these circumstances, the trial court's denial of

22 petitioner's motion for a continuance was not "unreasonable and arbitrary" and therefore did not

23 violate petitioner's federal constitutional rights.  Accordingly, he is not entitled to federal habeas

24 relief on this claim.

25 ////

26 ////

### 5.  Ineffective Assistance of Counsel

Petitioner claims that his trial and appellate counsel rendered ineffective assistance by virtue of numerous errors.  These claims were presented for the first time to the California Supreme Court in a petition for writ of habeas corpus.  Resp't's Lodg. Doc. 16.  The Supreme Court denied that petition on procedural grounds as untimely with a citation to *In re Robbins*, 18 Cal. 4th 770, 780 (1998).  Resp't's Lodg. Doc. 17.  *See Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007) (a California court's citation to *Robbins* is a "clear ruling" of untimeliness).  Because the California courts denied petitioner's ineffective assistance claims on procedural grounds and did not evaluate petitioner's substantive arguments, there is no state court decision on the merits of petitioner's claims and this court must review them de novo.  *Johnson*, 2013 WL 610199, at *8; *Pirtle v. Morgan*, 313 F.3d 1160, 1165 (9th Cir. 2002) (AEDPA standard of review not applicable where the state court denied petitioner's claim on a procedural ground); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (§ 2254(d) requires deference only to state court adjudication on the merits and not to a disposition on procedural or other grounds); *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) (en banc) (defining "adjudication on the merits" to be a substantive, rather than a procedural, decision); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (court declined to apply deferential AEDPA standard because of state court's awareness of, and explicit reliance on, a procedural ground to dismiss petitioner's claim).

After setting forth the applicable legal principles, the court will address petitioner's arguments in turn below.

### a.  Applicable Legal Standards

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88. (quoting *Strickland*, 466 U.S. at 687). Surmounting the bar imposed by *Strickland* was "never an easy task," and "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 788.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434. In order to establish prejudice in this

////

1  context, petitioner must demonstrate that, but for counsel's errors, he probably would have

2  prevailed on appeal. *Id*. at 1434 n.9.

3  **b.  Trial Counsel**

4  **I.  Who fired first?**

5      Petitioner claims that his trial counsel rendered ineffective assistance when he failed to

6  ask Officers Durkin and Nowicki "if either of them had in fact fired the first shots, in this

7  shooting; or if they knew if the other had." Dckt. No. 1 at 44.  Petitioner is apparently

8  contending that an answer to this question from either or both of these officers would have aided

9  his defense that he fired his gun in self-defense, only after he was "shot first, by the

10  aforementioned two Officers." *Id.*

11      At trial, Officers Durkin and Nowicki both testified on direct examination that they did

12  not fire the first shot.  *See* RT at 93; 181-84; 240-43.  They explained that they took cover

13  immediately after Officer Durkin shouted out that petitioner had a gun.  *Id.*  Immediately

14  thereafter, they heard gunshots seemingly coming from the direction of the bedroom.  *Id.*  After

15  hearing these gunshots, they engaged their own weapons.  *Id.* at 186, 243-46.  In light of this

16  testimony by the two officers, petitioner cannot demonstrate that he was prejudiced by his trial

17  counsel's failure to ask them, again, whether they fired the first shots.  The clear import of their

18  trial testimony was that they did not, and there is no evidence they would have changed this

19  testimony.

20      Petitioner argues that Officers Durkin and Nowicki may have contradicted their earlier

21  testimony if asked again, or more directly, whether they fired the first shots.  He argues here and

22  throughout the petition that the trial testimony of these officers was not completely consistent

23  with their testimony at the preliminary hearing and/or the hearing on the defense motion to

24  suppress.  He asserts, "a fair minded jurist cannot argue that defense counsel expected their

25  testimony would have been the same, especially since these officers testimony has been very

26  ////

1    inconsistent with their previous testimony and statements on numerous issues." Dckt. No. 45 at

2    10.

3            Petitioner's speculation that Officers Durkin and Nowicki might have changed their trial

4    testimony if they were asked again by petitioner's trial counsel whether they fired the first shots

5    at petitioner's residence is insufficient to establish either deficient performance or prejudice with

6    respect to this claim. Without some evidence that the officers would have contradicted their

7    earlier trial testimony, petitioner cannot show that his trial counsel was deficient in failing to ask

8    this question again. Counsel may have had a tactical reason for declining to revisit this issue,

9    especially since the officers' trial testimony that petitioner fired the first shots was damaging to

10   the defense theory of the case. In short, trial counsel's decision not to ask the two officers

11   whether they fired the first shot, under the circumstances of this case, fell within the "wide range

12   of professionally competent assistance" and did not result in prejudice. *Strickland*, 466 U.S. at

13   690. Accordingly, petitioner is not entitled to relief on this claim.

### ii. Petitioner's position in the bedroom

15           Next, petitioner claims that his trial counsel rendered ineffective assistance in failing to

16   challenge Officer Nowicki about his trial testimony that petitioner was "standing in the bedroom

17   facing [the two officers] in the doorway." Dckt. No. 1 at 44; *see also* RT at 272. Petitioner

18   states that this testimony is inconsistent with a police report contained in the record which quotes

19   Officer Nowicki as saying that he saw petitioner "turned away from him" when he first saw him

20   in the bedroom, but that he then "turned to face" the officers. Dckt. No. 1 at 44; CT at 193.

21   Petitioner argues that it was "exactly at this point, while petitioner was facing away from these

22   officers that he was shot first from behind, through both of his legs, by Officer Durkin." Dckt.

23   No. 1 at 44. Petitioner argues that it was crucial to elicit the information that Officer Nowicki

24   told investigating police officers that petitioner was facing away from him at first, because this

25   would bolster petitioner's claim that he was shot from behind and that he shot back only in self-

26   defense. Dckt. No. 45 at 11. He argues, "this statement was crucial because petitioner has two

1 gunshot wounds to the back of his legs and this is exactly when he received those wounds." *Id.*

2 Petitioner also argues that cross-examination on this subject was relevant to impeach Officer

3 Nowicki's credibility.  Dckt. No. 1 at 44.

4        Petitioner is not entitled to relief on this claim.  First, Officer Nowicki's statement to

5 police that petitioner was facing away from him at first, but that he then turned around, was not

6 significantly different from his trial testimony that petitioner was facing forward when he first

7 saw him in the bedroom.  Even if it were, petitioner has failed to demonstrate prejudice.

8 Regardless of any inconsistencies in the evidence with regard to whether petitioner was initially

9 facing away from the officers and then immediately turned to face them, or whether petitioner

10 was always facing forward, both officers testified they did not fire the first shots.  This

11 testimony, which was uncontradicted by any direct evidence, undermined petitioner's defense

12 that he shot the officers in self-defense.  Further, petitioner has not pointed to any trial evidence

13 showing that he was shot from behind.  In light of these facts, cross-examining Officer

14 Nowicki's trial testimony in order to point out minor inconsistencies with regard to his

15 explanation of which direction petitioner was facing in the bedroom could not have had a

16 significant effect on the jury verdict in this case.

17        Petitioner also argues that his trial counsel improperly failed to investigate "forensics of

18 the shooting."  Dckt. No. 45 at 11.  However, he fails to suggest what his counsel should have

19 done and what he means in this context by "forensics."  Unlike the cases petitioner cites in

20 support of this claim, he fails to suggest what forensic analysis would have uncovered and

21 whether it would have been helpful to his defense.  *C.f., e.g., Darughon v. Dretke*, 427 F.3d 286

22 (5th Cir. 2005) (counsel ineffective in failing to introduce expert forensic testimony regarding

23 the trajectory of the bullet, where that evidence would have supported petitioner's version of the

24 events).  Without any evidence regarding the probable results of "forensic" testing, petitioner is

25 unable to demonstrate prejudice, or a reasonable probability that the outcome of the proceedings

26 would have been different had trial counsel conducted further investigation into this area.

1    Accordingly, petitioner is not entitled to habeas relief on this claim.

2                    **iii.  When did Officer Durkin draw his gun?**

3           Next, petitioner claims that his trial counsel rendered ineffective assistance in failing to

4    impeach Officer Durkin with the inconsistency between his testimony at the preliminary hearing

5    that he didn't remember whether he had anything in his hands when he first made contact with

6    petitioner, and his trial testimony wherein he stated that he did not have anything in his hands at

7    that time.  Dckt. No. 1 at 45.  *See* CT at 58, RT at 177.  Petitioner also compares Durkin's

8    testimony with the preliminary hearing and trial testimony of Officer Nowicki to the effect that

9    Officer Durkin told petitioner "there's going to be a lot more pointed at you if you don't come

10   out and deal with the issue."  Dckt. No. 1 at 45.  *See* CT at 84, RT at 265.  Petitioner argues,

11   "when you take these two statements in context, together it becomes obvious that Officer Durkin

12   did in fact have his gun out in his hand, and pointed at petitioner.  This also goes to Officer

13   Durkins credibility, under oath."  Dckt. No. 1 at 45.  Petitioner appears to be arguing that the

14   officers' testimony, described above, implies that Officer Durkin had a gun in his hand when he

15   first approached petitioner, and that this fact provides support for his defense that Officer Durkin

16   shot petitioner before petitioner shot him.  In the traverse, petitioner argues that the above-

17   recited testimony makes it "obvious" that Officer Durkin "was pointing his weapon at

18   petitioner."  Dckt. No. 45 at 12.

19          Petitioner has failed to demonstrate prejudice with respect to this claim.  The record of

20   the preliminary hearing reflects that Officer Nowicki testified Officer Durkin was not pointing

21   anything at petitioner and did not have anything in his hand when he told petitioner that "there's

22   going to be a lot more pointed at you if you don't come out and deal with the issue."  CT at 85,

23   RT at 265.  There is no evidence that cross-examining either officer about this subject would

24   have led to information supporting petitioner's argument that Durkin was pointing a gun at

25   petitioner from the beginning of the altercation.  As noted in the claim above, there is no

26   evidence that the officers would have changed their testimony on this point.  Further, Officer

                                                    28

Durkin's statement at the preliminary hearing that he didn't remember whether he had anything in his hand when he first encountered petitioner at the apartment, and his trial testimony that he did not have anything in his hand at that time, is not necessarily inconsistent.  In any event, the difference is not so significant that highlighting it would likely have led to a different outcome at petitioner's trial.  For these reasons, petitioner is not entitled to relief on this claim.

### iv.  The Police Radio/Timeline

In his next claim, petitioner argues that his trial counsel rendered ineffective assistance in failing to introduce evidence from the police "radio traffic transcript" showing that only 75 seconds elapsed between the time that Officer Durkin told the radio dispatcher he had located a door with a broken window at petitioner's apartment, and the time he told the dispatcher shots had been fired at the apartment.  Dckt. No. 1 at 45-46; Dckt. No. 45 at 12.  Petitioner argues that this short time period between Officer Durkin's arrival and his "needs assistance call" would have "disproven Officer Durkin's testimony, concerning having a lenthy [sic] conversation with petitioner, at the front door; and a second brief conversation with petitioner at the bedroom door, as well as brief conversation with petitioner's wife, outside of residence."  Dckt. No. 1 at 45-46.  Petitioner argues that "it was impossible for Durkin to have had all the conversations he claimed to have had in this short amount of time."  Dckt. No. 45 at 12-13.  He also argues that the radio traffic transcript "would have also proven that the Officers rushed into petitioner's residence, and were not acting as reasonable Officers would, in the same type of circumstances" and that "the shooting could not have all taken place in the aforementioned time frame, as was stated in Officer Durkin's testimony."  Dckt. No. 1 at 46.  Petitioner explains that he attempted to obtain this timeline from his trial counsel and through discovery requests in state court but was unsuccessful.  Dckt. No. 45 at 13.  Petitioner also explains that, while he has seen the relevant transcript, the portion of the transcript where Officer Durkin reports seeing the broken window is missing because "it was thrown away by guards at High Desert State Prison when petitioner arrived there from Butte County jail."  *Id.*

1       Petitioner has failed to demonstrate either deficient performance or prejudice with respect

2   to this claim.  Without any evidence of what the radio transcript actually shows, petitioner

3   cannot demonstrate that his trial counsel was ineffective in failing to introduce the transcript into

4   evidence at petitioner's trial.  Even assuming arguendo that the transcript shows only a 75

5   second delay between when Officer Durkin first arrived at the residence and when he called for

6   assistance, petitioner's argument that this information would have caused the jury to disregard

7   Officer Durkin's entire trial testimony is too speculative to warrant relief.  On the record before

8   this court, petitioner has failed to show a substantial likelihood that the result of the proceedings

9   would have been different if his trial counsel had offered the radio timeline into evidence.

10  Accordingly, he is not entitled to relief on this claim.

11                      **v.  Durkin's reason for entering the residence**

12      In his next claim for relief, petitioner argues that his trial counsel rendered ineffective

13  assistance in failing to question Officer Durkin at the hearing on petitioner's Cal. Penal Code

14  § 1538.5 motion to suppress about inconsistent statements "concerning why the officers entered

15  petitioner's residence without a warrant."  Dckt. No. 1 at 46.  Petitioner points specifically to

16  Durkin's testimony during the preliminary hearing that he entered the residence because

17  petitioner was being uncooperative, and his testimony during the hearing on the motion to

18  suppress that he entered the residence because of the nature of the domestic disturbance call and

19  in order to detain petitioner to determine what had transpired.  *Id.*

20      In the traverse, petitioner argues that his trial counsel should have asked Officer Durkin

21  at the hearing on the motion to suppress whether petitioner's wife told him she was injured.[10]

22  Dckt. No. 45 at 14.  He argues that Durkin's answer to this question would have established that

23  there was no exigency justifying the officers' entry into his apartment.  *Id.*  Petitioner argues that

24  Officer Durkin's purpose for making a warrantless entry into his residence was of "vital

25  
26      [10]  At trial, Officer Durkin testified that petitioner's wife told him she was not injured,
    and that she did not look like she had been injured.  RT at 204.

1  importance" to the success of his motion to suppress.  Dckt. No. 1 at 46.  He contends that

2  Officer Durkin changed his testimony in order to demonstrate that there were exigent

3  circumstances justifying the entry into the apartment.  *Id.* at 46-47.  Petitioner argues that "the

4  important fact here is Durkins story changes from pre-lim to 1538.5 to trial in regards to why he

5  entered the residence, and facts that he was aware of before he made his unlawful entry."  Dckt.

6  No. 45 at 15.

7      Petitioner has failed to demonstrate that the trial court's ruling on the motion to suppress

8  would have been different had his trial counsel cross-examined Officer Durkin about these

9  alleged inconsistencies.  The trial court denied the suppression motion on the grounds that

10  evidence of  "9-1-1- call, loud voices, broken out window" demonstrated exigent circumstances

11  that justified the officers' entry into petitioner's apartment.  Dckt. No. 40-1 at 8.  The California

12  Court of Appeal agreed that exigent circumstances justified the entry into the apartment because:

13  (1) the officers were responding to an early morning 911 domestic disturbance call that a man

14  was breaking items inside the apartment; (2) the officers were informed that there was a possible

15  restraining order; (3) when Officer Durkin arrived at the apartment, he confirmed that there was

16  an ongoing domestic disturbance because he heard loud arguing and saw a broken glass pane; (4)

17  Officer Durkin encountered petitioner's wife who, while not injured, was agitated and frightened

18  and told him that petitioner was breaking objects and she wanted to leave; and (5) Officer

19  Durkin was able to partially corroborate what petitioner's wife was saying because he saw the

20  broken pane of glass and saw a "highly agitated" man inside the apartment who would not come

21  out and discuss the situation.  *Id.* at 10-11.  The Court of Appeal also observed that "it was

22  defendant who did not comply with the officer's request to come out and so the officer could not

23  arrest him in front of the apartment."  *Id.* at 11.

24      In light of all of these factors supporting a finding of exigency, trial counsel's failure to

25  question Officer Durkin about the alleged relatively small inconsistencies in his testimony as to

26  why he entered the apartment could not have had a significant impact on the outcome of the

1  suppression motion or the verdict in this case.  Accordingly, petitioner is not entitled to habeas

2  relief on this claim.

### vi.  When did Durkin talk to petitioner?

4          Next, petitioner claims that his trial counsel rendered ineffective assistance when he

5  failed to cross-examine Officer Durkin at the hearing on his motion to suppress about whether he

6  spoke to petitioner after he pursued him into the bedroom.  Dckt. No. 1 at 47.  Petitioner notes

7  that Officer Durkin testified at the preliminary hearing on direct examination that after he

8  pursued petitioner into the bedroom, "we" told petitioner "to come out, deal with it, those kind of

9  conversations."  *Id.  See* CT at 36.  Later at the same hearing, on cross examination, Officer

10 Durkin testified that he pursued petitioner into the bedroom but "didn't say anything to him at

11 that point."  *Id.* at 65.  However, during the hearing on petitioner's motion to dismiss, Officer

12 Durkin testified that he pursued petitioner to the bedroom and told him "you need to come with

13 us, you need to stop resisting."  RT at 24.  Petitioner argues that, if he had highlighted these

14 inconsistencies to the jury, his trial counsel could have demonstrated that Officer Durkin was

15 "fabricating a complete conversation that he never had with petitioner" and that Durkin was not

16 acting "in a reasonable manner."  Dckt. No. 1 at 47.  In the traverse, petitioner also argues that

17 these inconsistencies in Officer Durkin's testimony demonstrate that trial counsel should have

18 obtained the radio traffic transcript, in order to ascertain whether there was sufficient time

19 between when the officers arrived at petitioner's residence and when they called for emergency

20 assistance to have had these types of conversations.  Dckt. No. 45 at 16.  Petitioner argues that if

21 his trial counsel had impeached Officer Durkin on these matters, he might have prevailed on his

22 motion to suppress.

23         Again, petitioner has failed to demonstrate prejudice with respect to this claim.  In light

24 of the evidence, described above, that exigent circumstances justified the officers' entry into

25 petitioner's residence without a warrant, trial counsel's failure to cross-examine Officer Durkin

26 about small inconsistencies in testimony about his conversations with petitioner (i.e., Officer

1   Durkin twice stated they he and Officer Nowicki ordered petitioner to come out of the house, but

2   once stated that he didn't say anything to petitioner at that time), would not have changed the

3   trial court's ruling on the motion to suppress.  Accordingly, petitioner is not entitled to federal

4   habeas relief on this claim.

5                          **vii.  Durkin's explanation to petitioner at the residence**

6           Petitioner's next claim for relief is that his trial counsel rendered ineffective assistance

7   when he failed to impeach Officer Durkin with the inconsistency between his testimony at the

8   hearing on the motion to suppress that he explained to petitioner he was at the apartment for the

9   purpose of investigating a domestic violence report, and his testimony at the preliminary hearing

10  that after he entered the residence he told petitioner he wanted to discuss the "issue," but did not

11  explain what the "issue" was.  Dckt. No. 1 at 48.  *See* RT at 20; CT at 63.  Petitioner argues that

12  "impeaching Officer Durkin's testimony would have proven that the Officers were not following

13  proper police protocol, when they made their unlawful warrantless entry into petitioner's

14  residence."  Dckt. No. 1 at 48.  Petitioner also argues the suggested cross-examination would

15  have demonstrated that Officer Durkin was trying to manufacture exigent circumstances for

16  entering petitioner's apartment.  *Id*; Dckt. No. 45 at 16-17.

17          Petitioner's argument that the suggested cross-examination would have had an impact on

18  the trial proceedings or the motion to suppress lacks merit.  Officer Durkin's testimony at the

19  hearing on the motion to suppress and his testimony at the preliminary hearing were not

20  necessarily inconsistent.  Further, any slight inconsistency was not significant enough to have

21  affected the jury verdict in this case or the trial judge's ruling on petitioner's motion to dismiss.

22  Petitioner has failed to establish either deficient performance or prejudice with respect to this

23  claim.  Accordingly, he is not entitled to federal habeas relief on it.

24                                      **viii.  Trial counsel's argument**

25          In his next claim for relief, petitioner argues that his trial counsel rendered ineffective

26  assistance in failing to tell the jury in his opening statement "and/or" closing argument that

33

1    petitioner was "shot first by officers from behind," and to support that argument with evidence

2    that petitioner's "entry wounds" were to "the back of both his legs."  Dckt. No. 1 at 48.

3    Petitioner contends that this argument "would have changed the verdict in petitioner's favor."

4    *Id.*

5         First, as respondent points out, petitioner's trial counsel made this argument during his

6    closing argument.  Dckt. No. 40 at 32.  Indeed, the record reflects that petitioner's trial counsel

7    argued in closing that the officers had their guns out from the beginning of the incident and fired

8    first, notwithstanding their testimony to the contrary.  *See* RT at 663-70.  Petitioner counters that

9    counsel's argument was "a weak and feeble attempt at best."  Dckt. No. 45 at 17.  This court

10   disagrees.  After a review of trial counsel's closing argument, the court concludes that petitioner

11   was not prejudiced by his trial counsel's alleged failure to sufficiently argue that petitioner was

12   shot first by the officers and that he fired back in self-defense.  The argument was made on his

13   behalf and the jury obviously rejected it.  Petitioner has also failed to demonstrate that there was

14   any evidence he was shot from behind that his trial counsel failed to introduce.  Accordingly,

15   petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

16                          **ix.  Two .40-caliber shell casings**

17        In his next ground for relief, petitioner claims that his trial counsel rendered ineffective

18   assistance in failing to introduce into evidence two shell casings which were found under some

19   furniture in the bedroom of petitioner's apartment after the authorities concluded their crime

20   scene investigation.  Dckt. No. 1 at 49.  He argues that these shell casings were ".40 caliber" and

21   that, because of where they were found, they would have "proven that Officer Durkin shot

22   petitioner at the bedroom doorway, and that Durkin fired two more shots than he testified to."

23   *Id.*

24        In the answer, respondent argues that petitioner has provided no evidence that these shell

25   casings exist.  Dckt. No. 40 at 33.  In the traverse, petitioner requests an evidentiary hearing to

26   prove the existence of the shell casings.  Dckt. No. 45 at 18-19.  However, petitioner's own

1   statements demonstrate that there was good reason for his trial counsel not to introduce the

2   casings.  The traverse includes an attached declaration signed by petitioner's brother, which

3   declares that, prior to petitioner's trial, petitioner's former wife "had a bag of 3 or 4 shell casings

4   of 40 caliber that were from there [sic] bedroom left there after the incident in question." *Id.* at

5   67.  Petitioner's brother further declares that he and several other people took the casings to an

6   attorney who they wanted to hire, and that this attorney "picked [the shell casings] up and looked

7   at them," but that the attorney was too expensive and they "could not afford him." *Id.*  In

8   addition, in a motion to expand the record filed by petitioner approximately six months after the

9   traverse was filed, petitioner attached a declaration signed by his former wife, in which she states

10  that, approximately two or three weeks after the events at petitioner's residence, she found three

11  shell casings and one bullet fragment in her bedroom, "under the chest of drawers in the

12  apartment where my then husband, Kenny L. Warren, was shot by Chico Police Officers in June

13  of 2005." Dckt. No. 52 at 4.  She explains that she showed these items to petitioner when she

14  visited him in prison, and then took them to "an attorney consultation in Yuba City." *Id.*  A few

15  days later, she gave them to the defense investigator.  *Id.*

16      Petitioner explains in the traverse that he saw the shell casings himself when they were

17  smuggled into the prison by his former wife and that they were "indeed .40 caliber." Dckt. No.

18  45 at 18.  He further explains that he told his wife to give the items to the defense investigator.

19  *Id.*  Petitioner later asked his trial counsel about the shell casings.  *Id.*  Counsel told petitioner

20  that the casings were "in fact Petitioner's 9mm." *Id.* at 18-19.  Petitioner suggests that the Chico

21  Police Department may have deliberately withheld the shell casings from him.  *Id.*

22      Petitioner has failed to demonstrate that his trial counsel rendered ineffective assistance

23  in failing to introduce into evidence the two shell casings purportedly found by his wife under

24  the dresser in his bedroom.  Petitioner states that his trial counsel determined, or believed, that

25  the casings came from petitioner's own firearm.  Counsel did not render ineffective assistance in

26  ////

1  failing to introduce evidence that petitioner's bullet casings were found in his bedroom.  This

2  evidence would not have aided petitioner's defense.[11]   Accordingly, counsel's failure to

3  introduce the evidence was not deficient or prejudicial.

### x.  How many shots did Durkin fire?

5       Petitioner's next claim is that his trial counsel rendered ineffective assistance in failing to

6  cross-examine Officer Durkin about inconsistencies in his testimony at the preliminary hearing

7  and at trial regarding how many shots he fired during the altercation at petitioner's residence.

8  Dckt. No. 1 at 49.  During the preliminary hearing, Durkin twice testified that he fired

9  "approximately" six shots.  *See* CT at 41, 72.  At trial, however, he testified that he fired eight

10 shots.  RT at 186.  Petitioner argues, "knowing that eight (8) shots were fired, instead of six,

11 would shown [sic] that Officer Durkin had fabricated his testimony, in order to make it fit with

12 what the Department of Justice's evidence was."  Dckt. No. 1 at 49.  Petitioner also argues that

13 he suffered prejudice from trial counsel's failure to highlight these inconsistencies because the

14 two extra shots could have explained the shell casings found in his residence by petitioner's wife

15 after the police investigation had concluded.  He argues, "failure to cross examine or impeach on

16 this issue combined with the two shell casings that defense counsel withheld from trial was

17 another deliberate and egregious error."  Dckt. No. 45 at 20.

18      Petitioner's allegations with respect to this claim are too vague and speculative to

19 establish that his trial counsel rendered deficient performance in failing to cross-examine Officer

20 Durkin about the number of shots that he fired at petitioner's residence.  First, petitioner's

21 argument that Officer Durkin fired eight shots is consistent with Durkin's trial testimony to the

22 same effect.  In addition, Durkin's testimony at the preliminary hearing that he fired

23 "approximately" six shots is not necessarily inconsistent with his trial testimony that he fired

24 eight shots.  Petitioner has not demonstrated that the result of the proceedings would have been

25 ───────────────

26 [11] Nor has petitioner shown how introduction of the shell casings, even assuming they
were from the officers' weapons, would have likely resulted in a different outcome.

1  different had counsel cross-examined Officer Durkin on this subject.  Petitioner is not entitled to

2  federal habeas relief on this claim.

3  **xi.  Officer Durkin's description of petitioner's behavior**

4  In his next claim for relief, petitioner argues that his trial counsel rendered ineffective

5  assistance in failing to cross-examine Officer Durkin on the inconsistency between his statement

6  at the preliminary hearing that before he entered petitioner's residence petitioner was "just

7  standing," and his testimony at trial that petitioner was "agitated," and that he was "using

8  profanity" and "moving around quite a bit, he wasn't standing in one spot."  Dckt. No. 1 at 50.

9  *See also* CT at 29; RT at 175.  Petitioner argues that cross-examination on this subject would

10  have demonstrated that Officer Durkin had a "continued tendency to fabricate his testimony

11  against petitioner" and that Durkin was trying to give the false impression that petitioner was

12  "acting unreasonable or possibly dangerous towards Officers, when petitioner was not."  Dckt.

13  No. 1 at 50.  Respondent argues in the answer that this is "yet another meaningless alleged

14  inconsistency in Durkin's testimony."  Dckt. No. 40 at 33.

15  This court agrees that petitioner has failed to demonstrate prejudice with respect to this

16  claim.  In light of the overall evidence of petitioner's guilt, trial counsel's failure to highlight any

17  inconsistency between Officer Durkin's testimony at the preliminary hearing and his testimony

18  at trial with regard to whether petitioner was "just standing," or whether he was agitated and

19  moving around when the officers encountered him at his apartment, does not undermine

20  confidence in the outcome of petitioner's trial.  Accordingly, he is not entitled to federal habeas

21  relief on this claim.

22  **xii.  When did Petitioner draw his gun?**

23  In his next claim for relief, petitioner argues that his trial counsel rendered ineffective

24  assistance in failing to cross-examine Officers Durkin and Nowicki about whether they could see

25  if petitioner had a silver handgun when they observed him in the bedroom of the apartment.

26  Dckt. No. 1 at 50-51.  The background to this claim is the following.

37

At the hearing on petitioner's motion to suppress evidence, Officer Durkin testified that after he heard Officer Nowicki state that he was going to deploy his taser, "the defendant reached with his left hand to the end of his shirt, pulling the shirt up and in an upwards direction, revealing a handgun in his waistband." CT at 25.  At petitioner's trial, Officer Durkin testified that after Officer Nowicki indicated he was going to deploy his taser, Durkin "noticed the defendant reaching down with his left hand subsequently pulling the front of his t-shirt which was untucked, pulled the front of his t-shirt up and I noticed there was a handgun, a silver handgun in the waistband of his jeans or pants." RT at 181.  Durkin also testified that it appeared to him that petitioner was attempting to remove the handgun from his waistband. *Id.* at 182.  He explained that he and Officer Nowicki were standing in the same doorway at the time, with Officer Nowicki to his right. *Id.* at 181.

Petitioner notes, however, that Officer Nowicki testified at the preliminary hearing that a dresser in the bedroom in front of where petitioner was standing obstructed his view of petitioner from the chest down. CT at 89, 114.  At trial, he testified that, although he heard Officer Durkin yell a couple of times that petitioner had a gun, he did not see the gun himself. RT at 241.  He explained that he was standing to Officer Durkin's right. *Id.*  He further explained that Officer Durkin had a better view of petitioner than he did because there was a "chest of some type along the west wall of the apartment that obstructed my view slightly of the suspect." *Id.* at 242.

Petitioner argues that if Officer Nowicki couldn't see the gun, then Officer Durkin wouldn't have seen it either, given his "vantage point." Dckt. No. 1 at 51.  In the traverse, petitioner explains that the chest of drawers that blocked Officer Nowicki's view of petitioner "would absolutely be blocking Durkin's view of petitioner even more so than Nowicki's view, due to the location both officers testified to in regards to where they were standing at the bedroom doorway." Dckt. No. 45 at 21.  In support of this claim, petitioner directs the court's attention to a diagram of petitioner's residence that was filed as an exhibit to petitioner's motion to suppress. CT at 224.  Petitioner argues that his trial counsel's deficient performance in failing

1  to cross-examine the two officers about this subject resulted in prejudice because "once again

2  this would have shown that Officer Durkin has fabricated his testimony." Dckt. No. 1 at 51.

3       The record simply does not support the claim that petitioner was prejudiced by a failure

4  of his trial counsel to cross-examine Officers Durkin and Nowicki as to whether they could see if

5  petitioner had a handgun.  Officer Durkin testified at the hearing on the motion to suppress and

6  also at trial that he saw petitioner's handgun in his waistband.  Officer Nowicki stated that he did

7  not see the handgun because he was standing to the right of Officer Durkin and his view was

8  obstructed by a dresser.  There is no evidence that these officers would have changed their

9  testimony if petitioner's trial counsel had cross-examined them on this subject.  The officers'

10  testimony was mutually consistent and did not waiver.  Petitioner has also failed to provide any

11  evidence that the dresser completely obscured the view of both officers.  Petitioner's speculation

12  to the contrary is insufficient to establish prejudice.  Accordingly, petitioner is not entitled to

13  relief on this claim.

14                    **xiii.  Trial counsel and the scene of the crime**

15       In his next ground for relief, petitioner claims that his trial counsel rendered ineffective

16  assistance in failing to personally visit petitioner's apartment, "where the shooting had taken

17  place." Dckt. No. 1 at 51.  He argues that a visit to the crime scene would have "aided counsel

18  in introducing a viable defense at trial" and would have "aided counsel on how critical it was to

19  have had an expert witness investigate, and testify specifically about trajectory [sic] and balistics,

20  [sic] at trial." *Id.*  In the traverse, petitioner explains that a visit to the crime scene would have

21  shown trial counsel that the "angle of fire" from the bathroom to where petitioner was standing

22  in the bedroom was "impossible, specifically the angle through petitioner's legs," and that a

23  "ballistics and trajectory expert was absolutely necessary for the defense." *Id.* at 21-22.

24  Petitioner concedes that the defense investigator did go to petitioner's residence on "a couple of

25  occasions." *Id.* at 22.  However, petitioner contends that the investigator "never went into the

26  ////

                                           39

1  bathroom or the bedroom, he just sat on the couch petting the family cat, talking to petitioner's

2  then wife Priscilla." *Id.*

3        Petitioner's argument that a personal visit to petitioner's apartment by his trial counsel

4  would have led to further ballistics testing, which in turn would have uncovered evidence to aid

5  petitioner's defense, is entirely too speculative to establish either deficient performance or

6  prejudice with respect to this claim of ineffective assistance of counsel.  It is noteworthy that the

7  defense investigator's visit to petitioner's apartment did not lead to the evidence suggested by

8  petitioner.  Because of his failure to establish prejudice, petitioner is not entitled to relief on this

9  claim.

10        **xiv.  Relative of community service officer on jury**

11        In petitioner's next claim for relief, he argues that his trial counsel rendered ineffective

12  assistance in failing to challenge a juror who stated that his mother-in-law worked for the Chico

13  Police Department as a Community Service Officer.  Dckt. No. 1 at 51-52.  Petitioner argues that

14  counsel's failure to excuse this juror prejudiced him because "it is very likely that the

15  aforementioned relationship influenced that juror's verdict." *Id.* at 52.

16        Petitioner's speculation that this juror was biased against him because of his mother-in-

17  law's employment with the Chico Police Department is insufficient to establish prejudice.  In

18  addition, as respondent points out, the juror in question stated that he could vote to acquit

19  petitioner if the state did not prove its case, and that his relationship with his mother-in-law

20  would "absolutely not" affect his ability to be fair in this case.  Augmented Reporter's Transcript

21  (ART) at 36-38.  Under these circumstances, petitioner cannot demonstrate that his trial counsel

22  rendered ineffective assistance in failing to excuse this juror from the jury panel.

23        **xv.  Potential juror spending time in jail with petitioner**

24        Petitioner's next claim for relief is that his trial counsel rendered ineffective assistance in

25  failing to "investigate and get documentation" concerning the juror discussed immediately above

26  who, according to petitioner, served time with petitioner at the Butte County Jail.  Dckt. No. 1 at

52.  In support of this claim, petitioner directs the court's attention to a portion of the jury voir dire during which one of the jurors informed the court that, ten years earlier, he was convicted of misdemeanor possession of methamphetamine and receipt of stolen property and served a short period of time in the Butte County Jail.  ART at 60-63.  The juror stated that the experience would not affect his ability to be fair, and he did not mention petitioner in any way.  *Id.* Petitioner argues that this situation "is a clear showing of juror misconduct."  Dckt. No. 1 at 52.

In the traverse, petitioner states that this juror was incarcerated with him in "the same housing tank, on the very next bunk."  Dckt. No. 45 at 23.  He directs the court's attention to his sentencing proceedings in this case, wherein he informed the trial judge that he wished to file a motion for new trial, in part, on the grounds that "one of my jurors was in custody the same time that I was in the past."  RT at 713.  Petitioner asserts that his trial counsel "did not say one word in regards to this or in regards to being unaware of this."  Dckt. No. 45 at 23.

Petitioner is apparently claiming that his trial counsel rendered ineffective assistance in failing to ascertain that one of petitioner's jurors had previously spent time with him in jail. Assuming arguendo that petitioner did spend time in jail with one of his jurors, he does not explain how his trial counsel would have known this.  Indeed, he implies that his counsel was not aware of the situation.  Nor does petitioner explain why this fact would cause the juror to be biased against petitioner.  There is no evidence that this juror remembered petitioner or that he had any interaction with him.  Petitioner's vague allegations fail to establish either deficient performance on the part of his trial counsel, or that he suffered prejudice from any action or inaction by trial counsel.  Accordingly, he is not entitled to habeas relief on this claim.

### xvi.  Ballistics expert to investigate powder burns

Petitioner's next claim for relief is that his trial counsel rendered ineffective assistance in failing to utilize an expert witness on ballistics to demonstrate that petitioner was shot from behind at close range by Officers Durkin and Nowicki.  Dckt. No. 1 at 61.  He argues that this testimony would have been "dispositive on the issue of guilt on Counts 1 and 3 concerning

41

1   Petitioner being convicted of assault with a semiautomatic firearm on Officer Durkin, with an

2   enhancement for personally discharging a firearm; and in Count 3 he was convicted of false

3   imprisonment by violence, menace, fraud and deceit on Durkin, with an enhancement for

4   personally using a firearm." *Id.* at 59.  Petitioner argues that Officers Durkin and Nowicki

5   employed excessive force in pulling out their guns and utilizing pepper spray and a taser gun to

6   subdue him, when he had not "initiated any physical contact with the officers." *Id.* at 57.  He

7   states that Officer Durkin pointed a gun at him from outside the apartment, at which point

8   petitioner refused to come outside.  *Id.* at 64-65.  Petitioner asserts that:  (1) Officers Durkin and

9   Nowicki employed pepper spray and a taser gun, even though he had not initiated any physical

10  contact with the officers; (2) he was shot by the officers from behind; (3) he responded by

11  pulling out his own gun and shooting back; and (4) he was "facing away from the officers when

12  he was shot first, by officers, from behind." *Id.* at 65.  Petitioner argues that he was "the actual

13  victim of an assault with a deadly weapon, by Chico Police Officers Durkin and Nowicki." *Id.* at

14  57-58.

15      Petitioner argues that his trial counsel should have retained a ballistics expert to test the

16  powder burns on his clothing and the bedroom door in order to establish that petitioner was shot

17  by police officers before he shot them, that the officers shot immediately instead of attempting to

18  use non-lethal force first, and that petitioner was actually the victim of a crime and not the

19  perpetrator of a crime.  *Id.* at 61, 65.  Petitioner argues that, in the absence of testimony from a

20  ballistics expert, the jury was presented only with testimony supporting the prosecution's theory

21  of the case.  *Id.* at 63.

22      These allegations fail to establish prejudice.  Petitioner's failure to do anything more than

23  speculate that an expert witness would have provided testimony helpful to his defense is

24  insufficient for this purpose.  *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001), *amended by*

25  253 F.3d 1150 (9th Cir. 2001); *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001); *Dows v.*

26  *Wood*, 211 F.3d 480, 486-87 (2000).  Without direct evidence that specific witnesses would have

1    testified in a manner that might have led to a different result at trial, petitioner's allegations are

2    insufficient to support his claim that his trial counsel's failure to investigate and obtain an expert

3    on ballistics constituted ineffective assistance of counsel.

4            The court notes that several of petitioner's claims involve a general allegation that his

5    trial counsel rendered ineffective assistance in failing to conduct sufficient investigation into

6    ballistics and the exact sequence of events at petitioner's apartment on the day of the altercation.

7    It is true that defense counsel has a "duty to make reasonable investigations or to make a

8    reasonable decision that makes particular investigations unnecessary." *Mickey v. Ayers*, 606

9    F.3d 1223, 1237 (9th Cir. 2010) (quoting *Strickland*, 466 U.S. at 691). "This includes a duty to

10   . . . investigate and introduce into evidence records that demonstrate factual innocence, or that

11   raise sufficient doubt on that question to undermine confidence in the verdict." *Bragg*, 242 F.3d

12   at 1088 (citing *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999)). Counsel must, "at a

13   minimum, conduct a reasonable investigation enabling him to make informed decisions about

14   how best to represent his client." *Hendricks v. Calderon*, 70 F.3d 1032, 1035 (9th Cir. 1995)

15   (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations

16   omitted). *See also Porter v. McCollum*, 558 U.S. 30, ___, 130 S. Ct. 447, 453 (2009) (counsel's

17   failure to take "even the first step of interviewing witnesses or requesting records" and ignoring

18   "pertinent avenues for investigation of which he should have been aware" constituted deficient

19   performance). On the other hand, where an attorney has consciously decided not to conduct

20   further investigation because of reasonable tactical evaluations, his or her performance is not

21   constitutionally deficient. *See Siripongs II*, 133 F.3d 732, 734 (9th Cir. 1998); *Babbitt v.

22   Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998); *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir.

23   1995). *See also Bobby  v. Van Hook*, 558 U.S. 4, ___, 130 S. Ct. 13, 19 (2009) (failure to

24   unearth cumulative mitigating evidence where their investigation had produced sufficient

25   mitigating evidence was not deficient performance by counsel). "A decision not to investigate

26   thus 'must be directly assessed for reasonableness in all the circumstances.'" *Wiggins*, 539 U.S.

1  at 533 (quoting *Strickland*, 466 U.S. at 691).  *See also Kimmelman*, 477 U.S. at 385  (counsel

2  "neither investigated, nor made a reasonable decision not to investigate"); *Babbitt*, 151 F.3d at

3  1173-74.

4         A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time

5  of counsel's conduct.'"  *United States v. Chambers*, 918 F.2d 1455, 1461 (9th Cir. 1990)

6  (quoting *Strickland*, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a

7  duty to investigate must be considered in light of the strength of the government's case.'"

8  *Bragg*, 242 F.3d at 1088 (quoting *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986)).

9  *See also Rhoades v. Henry*, 611 F.3d 1133, 1142 (9th Cir. 2010).  In assessing an ineffective

10  assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls

11  within the 'wide range of professional assistance.'"  *Kimmelman*, 477 U.S. at 381 (quoting

12  *Strickland*, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised

13  acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d

14  695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

15         Here, petitioner has failed to adequately allege or establish either deficient performance

16  or prejudice with respect to his many claims of ineffective assistance of counsel based on a

17  failure to investigate.  Petitioner's conclusory allegations that further investigation, or the hiring

18  of various experts, would have resulted in a different verdict in his case are clearly insufficient to

19  establish either deficient performance or prejudice.  *See Jones*, 66 F.3d at 205 ("conclusory

20  suggestions" and "bald assertions" fall short of stating an ineffective assistance of counsel claim

21  and do not entitle the petitioner to an evidentiary hearing).  Likewise, a general assertion that

22  further investigation by counsel may have uncovered exculpatory evidence is insufficient to

23  establish prejudice.  *Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's

24  ineffective assistance claim denied where he presented no evidence concerning what counsel

25  would have found had he investigated further, or what lengthier preparation would have

26  accomplished).  Simply speculating, or stating, that further investigation would have led to

1    evidence that could have led to a different verdict does not establish prejudice. *Bible v. Ryan*,

2    571 F.3d 860, 871 (9th Cir. 2009); *Gonzalez v. Knowles*, 515 F.3d 1006, 1015-16 (9th Cir. 2008)

3    ("Such speculation is plainly insufficient to establish prejudice.").  Petitioner has presented no

4    evidence that his counsel's failure, if any, to conduct investigation into all of the areas he has

5    now suggested was objectively unreasonable. *See Strickland*, 466 U.S. at 691 ("Counsel has a

6    duty to make reasonable investigations or to make a reasonable decision that makes particular

7    investigations unnecessary.")[12]

8           Further, although petitioner complains or suggests that his trial counsel improperly failed

9    to call witnesses, possibly including expert witnesses, at his trial, petitioner has not identified

10   any experts who would have testified in his favor nor has he presented any evidence as to what

11   any particular witness would have testified to which would have aided his defense. *See Bragg*,

12   242 F.3d at 1088 (petitioner failed to establish prejudice where he did "nothing more than

13   speculate that, if interviewed," the witness would have given helpful information); *Wildman*, 261

14   F.3d at (speculating as to what expert witness would say is not enough to establish prejudice);

15   *Dows*, 211 F.3d at 486-87 (no ineffective assistance of counsel for failure to call witnesses where

16   petitioner did not identify an actual witness, provide evidence that the witness would testify, or

17   present an affidavit from the alleged witness); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir.

18   1997) (same); *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective

19   assistance because of counsel's failure to call a witness where, among other things, there was no

20   evidence in the record that the witness would testify); *United States v. Berry*, 814 F.2d 1406,

21   1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because

22   he offered no indication of what potential witnesses would have testified to or how their

23

24       [12] In addition, there is no evidence before this court that petitioner's counsel did not
conduct investigation into the areas now suggested by petitioner and simply conclude that those

25   areas were not fruitful.  Of course, "counsel need not undertake exhaustive witness
investigation." *Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009). *See also Mickey*, 606

26   F.3d at 1237 ("At the same time, of course, counsel need not investigate interminably.").

testimony might have changed the outcome of the hearing).  Petitioner's own opinion as to what potential witnesses would have said is insufficient for this purpose.  Finally, any claim that petitioner's trial counsel failed to investigate and present an adequate defense is not supported by the record.  Rather, the state court record before this court makes clear that petitioner's counsel was familiar with the facts of the case, contested the prosecution's case against petitioner aggressively, and employed a reasonable defense strategy.

In sum, for the reasons set forth above, petitioner's claims of ineffective assistance of counsel based on a failure to conduct sufficient investigation are largely conclusory, lack support, and fail to demonstrate that petitioner suffered prejudice as a result of the performance of his trial counsel.  Accordingly, petitioner is not entitled to federal habeas relief on these claims.

### xvii.  Sentencing Proceedings

In his next claim for relief, petitioner argues that his trial counsel rendered ineffective assistance in failing to object to the sentencing court's refusal to stay his sentence on count 3 on the grounds that: (1) he harbored only a single intent in both counts 1 and 3, and (2) the Sixth Amendment precludes the judge from making factual findings to determine whether a sentence should be imposed concurrently or consecutively.  Dckt. No. 1 at 71-72.  Petitioner also argues that trial counsel rendered ineffective assistance during the sentencing proceedings in failing to correct the prosecutor when he informed the court that "[petitioner's] first conviction in Napa in 1984 was a result of an arrest for shooting at a dwelling, 245 to 242.  So to say that he is not engaged in prior violent conduct is belied by his own record."  *Id.* at 77; *see also* RT at 724.

Petitioner states that he was not convicted of "§ 245, § 242, nor shooting at a dwelling, concerning a prior."  Dckt. No. 1 at 78.  He states that he told his trial counsel this but counsel stated, "I know that's for you to take up on appeal."  Dckt. No. 45 at 25.  Petitioner appears to be arguing that if his trial counsel had objected to this comment by the prosecutor, the result of the sentencing proceedings would have been different.

1    Petitioner has failed to demonstrate prejudice with respect to his claim that his trial

2    counsel rendered ineffective assistance in failing to object to his sentence on Count 3 on Sixth

3    Amendment grounds, or on the grounds that Count 3 was committed as part of the same course

4    of conduct, and with the same intent, as the assault charged in Count 1.  As explained above in

5    connection with petitioner's third claim for relief, the trial court declined to stay petitioner's

6    sentence on count 3, finding that petitioner's crimes involved separate acts of violence and had

7    different intents.  The California Court of Appeal agreed with the trial court on this point.  Under

8    these circumstances, there is no evidence the trial court would have stayed petitioner's sentence

9    on count 3 if his counsel had raised an objection to his sentence on the grounds that he harbored

10   only a single intent in both counts 1 and 3, and the Sixth Amendment precludes the judge from

11   making factual findings to determine whether a sentence should be imposed concurrently or

12   consecutively.  Accordingly, petitioner is not entitled to relief on this claim.

13       With regard to petitioner's argument that the prosecutor committed misconduct when he

14   informed the sentencing judge that petitioner had been convicted in 1984 of "shooting at a

15   dwelling," petitioner has failed to provide evidence that this statement was false.  Even if it was,

16   petitioner has failed to demonstrate a reasonable probability that the result of the sentencing

17   proceedings would have been different had petitioner's trial counsel objected to the statement.

18   Accordingly, petitioner is not entitled to relief on these claims.

19                              **c.  Appellate Counsel**

20       In his next claim for relief, petitioner argues that his appellate counsel rendered

21   ineffective assistance in failing to raise on appeal all of the claims of ineffective assistance of

22   counsel set forth above.  Dckt. No. 1 at 80-82; Dckt. No. 45 at 26.

23       This court has concluded that petitioner's claims of ineffective assistance of counsel are

24   not meritorious.  Accordingly, for the reasons described above, petitioner cannot demonstrate

25   that he probably would have prevailed if his appellate counsel had raised these claims on appeal.

26   *See Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("It should be obvious that the failure of

47

an attorney to raise a meritless claim is not prejudicial"); *Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011) (no prejudice from trial counsel's failure to investigate or raise two claims on appeal where "neither would have gone anywhere").  Appellate counsel's decision not to include these claims in petitioner's direct appeal in state court, but instead to focus on claims that counsel believed were more meritorious, was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  Accordingly, petitioner is not entitled to relief on his claim that his appellate counsel rendered ineffective assistance.

### 6. Prosecutorial Misconduct

In his final claim for relief, petitioner argues that the prosecutor committed misconduct in eliciting the testimony of Officers Durkin and Nowicki, knowing that their testimony was an attempt to cover up what actually happened at his apartment and was, therefore, essentially false. Dckt. No. 1 at 66-70; Dckt. No. 45 at 27.  He argues that the prosecutor "did not seek out the truth from officers Durkin and Nowicki, and that he encouraged them to perjure themselves by asking leading questions that specifically guided their testimony to be opposite of their prior testimony and police interviews in order to convict Petitioner and protect the officers from an unlawful entry and excessive force complaint, which amounted to a manifest miscarriage of justice." Dckt. No. 45 at 27.  Petitioner notes that the prosecutor "conducted every single hearing personally, from the first time the officers testified up until sentencing." *Id.*  He argues that this proves the prosecutor knew that the officers' testimony with regard to what happened at petitioner's apartment changed over time. *Id.*  Petitioner contends that the prosecutor "coached" the officers in order to elicit the testimony he wanted. *Id.*  He argues, "to say that the prosecutor did not know that the officers were changing their storys [sic] and perjuring themselves is obviously not true." *Id.* at 28.

Petitioner also argues that "any reasonable prosecutor" would have known that Officers Durkin and Nowicki were "committing perjury" when they testified that Officer Durkin "did not

1  have a gun in his hand and pointed at petitioner at the front door to his residence before making

2  entry, among other things." *Id.* at 29. Petitioner notes again, in this regard, that Officer Nowicki

3  testified he heard Officer Durkin say to petitioner "there's going to be a lot more pointed at you

4  if you don't come here and deal with this." *Id.* He also notes that petitioner's son told

5  investigating detective Robert Merrifield directly after the shooting that he heard petitioner ask

6  Officer Durkin why he had his gun out and pointed at him, and that he then heard running toward

7  the bathroom and gunshots. *Id. See also* CT at 140. Petitioner argues that, after reading these

8  portions of the record, "any person of reasonable common sense, especially an experienced

9  veteran prosecutor would come to the quite obvious conclusion that Officer Durkin indeed had

10  his gun out and pointed at Petitioner at this time for absolutely no reason . . . therefore both of

11  these officers committed perjury when they testified that he did not have a gun in his hand."

12  Dckt. No. 45 at 29-30. Petitioner argues that, even though the prosecutor knew the correct facts,

13  he proceeded with his case in order to protect the officers from the consequences of "the

14  wrongful shooting and unlawful entry in to the petitioner's residence." *Id.*

15      Petitioner also argues that the prosecutor committed misconduct in violation of *Napue v.*

16  *Illinois*, 360 U.S. 264 (1959) because he knew he was not telling the truth when he informed the

17  court during the sentencing proceedings that petitioner had been convicted in Napa in 1984 of a

18  violation of §§ 245 and 242 for shooting at a dwelling. *Id.* Petitioner states that those

19  convictions were "invalid." *Id.* at 31.

20      These claims of prosecutorial misconduct were presented to the California Supreme

21  Court in a petition for writ of habeas corpus, which was denied on procedural grounds as

22  untimely with a citation to *In re Robbins*, 18 Cal.4th 770, 780 (1998). Resp't's Lodg. Docs. 16

23  at 26-30; 17. Because the California courts denied petitioner's claim of prosecutorial

24  misconduct on procedural grounds, there is no state court decision on the merits of this claim and

25  this court must review it de novo. *Pirtle*, 313 F.3d 1160, 1165.

26  ////

1        A criminal defendant's due process rights are violated when a prosecutor's misconduct

2   renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

3   However, such misconduct does not, per se, violate a petitioner's constitutional rights. *Blodgett,*

4   5 F.3d 1180, 1191 (9th Cir. 1993) (citing *Darden*, 477 U.S. at 181, and *Campbell v. Kincheloe*,

5   829 F.2d 1453, 1457 (9th Cir. 1987)).  Claims of prosecutorial misconduct are reviewed "'on the

6   merits, examining the entire proceedings to determine whether the prosecutor's [actions] so

7   infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

8   *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). *See also Greer v. Miller*,

9   483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v*

10  *Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases in which

11  the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. *Johnson*,

12  63 F.3d at 930 (citing *Brecht*, 507 U.S. at 637-38); *see also Darden*, 477 U.S. at 181-83; *Turner*,

13  281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a

14  substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-*

15  *Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).  Finally, it is the petitioner's burden to

16  state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v.*

17  *Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

18        It is clearly established that "a conviction obtained by the knowing use of perjured

19  testimony must be set aside if there is any reasonable likelihood that the false testimony could

20  have affected the jury's verdict." *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985). *See*

21  *also Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004) ("The due process requirement

22  voids a conviction where the false evidence is 'known to be such by representatives of the

23  State.'") (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  This rule applies even where the

24  false testimony goes only to the credibility of the witness. *Napue*, 360 U.S. at 269; *Mancuso v*

25  *Olivarez*, 292 F. 3d 939, 957 (9th Cir. 2002).  There are three components to establishing a claim

26  for relief based on the prosecutor's introduction of perjured testimony at trial.  Specifically, the

1    petitioner must establish that: (1) the testimony or evidence was actually false; (2) the prosecutor

2    knew or should have known that the testimony or evidence was actually false; and (3) the false

3    testimony or evidence was material. *Hein v. Sullivan*, 601 F.3d 897, 908 (9th Cir. 2010).  Mere

4    speculation regarding these factors is insufficient to meet petitioner's burden. *United States v.*

5    *Aichele*, 941 F.2d 761, 766 (9th Cir. 1991).  In addition, the Ninth Circuit has held that a

6    conviction based on false testimony, even without any evidence of prosecutorial misconduct in

7    presenting the testimony, may result in a violation of a defendant's due process rights under the

8    Fourteenth Amendment. *Maxwell v. Roe*, 628 F.3d 486, 506-07 (9th Cir. 2010) ("[A]

9    defendant's due process rights were violated ... when it was revealed that false evidence brought

10    about a defendant's conviction."), *cert. denied*, ___ U.S. ___, 132 S.Ct. 611 (2012); *Killian v.*

11    *Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("we assume without deciding that the prosecutor

12    neither knew nor should have known of Masse's perjury about his deal.  Thus our analysis of the

13    perjury presented at Killian's trial must determine whether 'there is a reasonable probability that

14    [without all the perjury] the result of the proceeding would have been different.'"); *Hall v.*

15    *Director of Corrections*, 343 F.3d 976, 981–82 (9th Cir. 2003) (use of jailhouse notes,

16    subsequently proven to have been altered from their original state without knowledge of the

17    prosecutor, violated defendant's right to due process).

18         In this case, petitioner has failed to demonstrate that the prosecutor committed

19    misconduct in presenting the testimony of Officers Durkin and Nowicki.  Although petitioner

20    argues that the officers' testimony with regard to the events that occurred at his residence was

21    false, especially with regard to who fired the first shots and whether petitioner fired at the

22    officers in self-defense, he has failed to establish that the officers' version of the events is untrue.

23    Other than pointing at minor inconsistencies, if any, between the officers' testimony at the

24    preliminary hearing or the hearing on the motion to suppress and their testimony at trial, there is

25    no competent evidence that any of their testimony was false.  There is also no evidence, aside

26    from petitioner's speculation, that the prosecutor knew that any of the testimony of Officers

1  Durkin and Nowicki was false.  The basic thrust of their testimony was the same in all venues:

2  petitioner fired the first shots after the officers discussed deploying a taser gun, and the officers

3  then took cover and fired back.  There is no evidence here that any improper actions by the

4  prosecutor, or any false testimony presented at petitioner's trial, rendered the proceedings

5  fundamentally unfair or brought about a wrongful conviction.  Accordingly, petitioner is not

6  entitled to habeas relief on his claim of prosecutorial misconduct.

7  **C.  Request for Evidentiary Hearing**

8  Petitioner requests an evidentiary hearing on his claims.  He notes that he did not receive

9  an evidentiary hearing in state court.

10  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

11  following circumstances:

12  (e)(2) If the applicant has failed to develop the factual basis of a
    claim in State court proceedings, the court shall not hold an
13  evidentiary hearing on the claim unless the applicant shows that-

14  (A) the claim relies on-

15  (I) a new rule of constitutional law, made retroactive to cases on
    collateral review by the Supreme Court, that was previously
16  unavailable; or

17  (ii) a factual predicate that could not have been previously
    discovered through the exercise of due diligence; and
18
19  (B) the facts underlying the claim would be sufficient to establish
    by clear and convincing evidence that but for constitutional error,
    no reasonable fact finder would have found the applicant guilty of
20  the underlying offense;

21  28 U.S.C. § 2254(e)(2).

22  Under this statutory scheme, a district court presented with a request for an evidentiary

23  hearing must first determine whether a factual basis exists in the record to support a petitioner's

24  claims and, if not, whether an evidentiary hearing "might be appropriate."  *Baja v. Ducharme*,

25  187 F.3d 1075, 1078 (9th Cir. 1999).  *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

26  2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  A federal court must

take into account the AEDPA standards in deciding whether an evidentiary hearing is appropriate. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). A petitioner must also "allege[] facts that, if proved, would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir. 2000).

The court concludes that no additional factual supplementation is necessary and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. In addition, for the reasons described above, petitioner has failed to demonstrate that the state courts' decisions on his claims is an unreasonable determination of the facts under § 2254(d)(2). *See Schriro*, 550 U.S. at 481. Accordingly, an evidentiary hearing is not necessary or appropriate in this case.

## III. Discovery Motions

### A. Motion for Discovery and Motion for Interrogatories

On September 19, 2012, petitioner filed a motion for discovery. Dckt. No. 48. Therein, he requests wide-ranging discovery from his trial counsel, the Chico Police Department, and/or the Butte County District Attorney's Office, of: (1) all "police radio traffic" related to "petitioners case dated, 6-13-2005, from the initial dispatch until the conclusion of the incident;" (2) all photographs taken by the District Attorney and at the hospital of petitioner's bullet wounds; (3) all "police statements, interview, recordings and police reports" regarding "911 call and shooting of petitioner;" (4) all "transcripts and recordings" pertaining to the police interview of petitioner's son; and (5) all photographs taken of the scene of the shooting by "local and State investigators." *Id.* at 2-3. Petitioner argues that this discovery "is needed to substantiate and prove" his claims before this court. *Id.* at 2. He states that he has made a "good faith" effort to obtain this material from his trial counsel, but it has been "withheld from him." *Id.*

In addition, on September 19, 2012, petitioner filed a motion requesting that respondents and his trial counsel answer twenty-one separate interrogatories. Dckt. No. 47. Among other things, those interrogatories ask both respondents and petitioner's trial counsel to describe

1   substantially all of the actions they took or failed to take with respect to petitioner's prosecution

2   and defense, including contact with witnesses, presentation of the defense motion to suppress,

3   investigation into the facts of the altercation at petitioner's residence, trial and witness

4   preparation, and trial tactics.  *Id.* at 2-4.  These interrogatories appear to track the allegations

5   made by petitioner in the claims before this court and are apparently designed to provide support

6   for those allegations.  Petitioner advises the court that the discovery he seeks is relevant to his

7   overarching claim that: "plain and simple, his case involved an unlawful entry and shooting by

8   police officers and a cover-up, and providing these requests would have proven so and still will."

9   Dckt. No. 51 at 3.

10          A habeas petitioner is not entitled to discovery as a matter of course, but only upon a

11   fact-specific showing of good cause and in the court's exercise of discretion.  Rule 6(a), Rules

12   Governing § 2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S.

13   286 (1969); *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999) (discovery is available "only

14   in the discretion of the court and for good cause"); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir.

15   1997).  The burden of demonstrating the materiality of the information requested is on the

16   moving party.  *Stanford v. Parker*, 266 F.3d 442, 461 (6th Cir. 2001) (citing *Murphy v. Johnson*,

17   205 F.3d 809, 813–15 (5th Cir. 2000)).  "Bald assertions and conclusory allegations do not

18   provide sufficient ground to warrant requiring the state to respond to discovery or require an

19   evidentiary hearing." *Parker*, 266 F.3d at 460.  Good cause exists "where specific allegations

20   before the court show reason to believe that the petitioner may, if the facts are fully developed,

21   be able to demonstrate that he is entitled to relief.  *Bracy*, 520 U.S. at 908–09.

22          This court will deny petitioner's discovery motions in their entirety because petitioner

23   has failed to demonstrate good cause for the extensive discovery that he seeks.  First, petitioner

24   has failed to explain why the discovery that he now seeks is any different from the discovery that

25   was available to him in state court.  It is entirely possible that petitioner's trial counsel

26   ////

1 conducted the same investigation that petitioner now seeks to undertake through his discovery

2 motion and found it unproductive, or decided that the discovery was not material to the defense.

3      Petitioner is essentially seeking to obtain fairly wide-ranging discovery on the off chance

4 that it will provide helpful information in support of his claims.  It appears that petitioner wants

5 to start over and re-investigate the case against him from the beginning.  The habeas discovery

6 rules do not permit such a wide ranging exercise, nor do they allow a petitioner to investigate his

7 entire case anew after he has been convicted.  Habeas petitioners may not seek to use discovery

8 as a "fishing expedition . . . to explore their case in search of its existence." *Rich*, 187 F.3d at

9 1067 (quoting *Calderon v. U.S.D.C. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)).  *See also*

10 *Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir. 2011) (same).  Similarly, "good cause for

11 discovery cannot arise from mere speculation" and "discovery cannot be ordered on the basis of

12 pure hypothesis." *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006).

13      Finally, and most important, this court has concluded that none of petitioner's habeas

14 claims have merit.  Petitioner has not convinced the court that his requested discovery would

15 entitle him to federal habeas relief on any claim.  Nor has petitioner demonstrated a "reason to

16 believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined

17 illegally and is therefore entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 300 (1969).  In

18 short, there is no good cause to conduct further discovery with respect to petitioner's various

19 habeas claims at this time.[13]  Petitioner's motion seeking leave to conduct discovery is therefore

20

---

21     [13]  In his opposition to petitioner's discovery motions, respondent argues that the decision
  in *Pinholster* precludes the granting of discovery.  To the extent that petitioner's discovery
22 motions are directed to his claims of ineffective assistance of counsel or prosecutorial
  misconduct, *Pinholster* does not apply because those claims are subject to de novo review.  *See*
23 *Runningeagle v. Ryan*, 686 F.3d 758, 788 (9th Cir. 2012) (*Pinholster*, however, does not apply to
  Runningeagle's *Brady* claim because Runningeagle's *Brady* claim is subject to de novo
24 review.")  In addition, the undersigned notes that the decision in *Pinholster* is not necessarily
  controlling with regard to the availability of discovery in habeas cases.  In *Pinholster* the
25 Supreme Court addressed the question of whether a district court can consider new evidence
  when assessing whether a state court's decision was "contrary to, or involved an unreasonable
26 application of, clearly established Federal law" under 28 U.S.C. § 2254(d)(1).  The decision in

1    denied.

2       **B.  Motion to Expand the Record**

3       On November 29, 2012, petitioner filed a "motion to expand the record."  Dckt. No. 52.

4    Therein, petitioner asks this court to "include on the record" an attached declaration from

5    Priscilla Warren, his former wife, in which Ms. Warren states that, approximately two or three

6    weeks after the events at petitioner's residence, she found three shell casings and one bullet

7    fragment in her bedroom under a dresser in petitioner's bedroom.  This court has considered the

8    declaration from Priscilla Warren in connection with petitioner's claim of ineffective assistance

9    of counsel, discussed above at 34:16-35:21, and has determined that petitioner is not entitled to

10   relief on that claim notwithstanding Ms. Warren's declaration.  The court also finds that the

11   declaration from Ms. Warren does not demonstrate that petitioner was wrongfully convicted or

12   that there was a conspiracy by the police to frame him for a crime he did not commit.

13      Because the court has considered the declaration of petitioner's former wife in

14   connection with these findings and recommendations, petitioner's "motion to expand the record"

15   will be granted.

16   ////

17   _____

18   *Pinholster* does not mention discovery in the habeas context , nor does it reference the Supreme Court's own decision in *Bracy* or Rule 6 of the Rules Governing Section 2254 Cases, upon which the Supreme Court relied in reaching its decision to grant discovery.  *See Rossum v.*

19   *Patrick*, 659 F.3d 722, 737 (9th Cir. 2011); *Conway v. Houk*, No. 07–cv–947, 2011 WL 2119373 (S.D. Ohio, May 26, 2011) (noting that "*Pinholster* did not . . . alter or even speak to the

20   standards governing discovery set forth in [Rule 6] and *Bracy v. Gramley*" and finding that omission "reason enough to refrain from invoking *Pinholster*'s restrictions at the discovery

21   phase").  The court recognizes that some courts have extended the reasoning of the Supreme Court in *Pinholster* to find requests for discovery or to expand the record to be unwarranted in

22   particular federal habeas corpus proceedings.  *See e.g., Runningeagle*, 686 F.3d at 773-74 (concluding that, under *Pinholster*, petitioner was not entitled to discovery); *Peraza v. Campbell*,

23   462 Fed. Appx. 700, 701, 2011 WL 6367663, 1 (9th Cir. 2011) ("In summary, to the extent Peraza seeks to expand the record through discovery and an evidentiary hearing, beyond what

24   was presented to the state court, we conclude that such relief is precluded by *Pinholster* . . . .").  Whether or not the holding in *Pinholster* presents an impediment to expansion of the record in

25   federal habeas proceedings absent the preliminary finding that the decision of the state court is not entitled to deference under § 2254(d)(1) or (2), as discussed above the petitioner in this case

26   has not shown good cause for the discovery that he seeks.

### C.  Motion for Clarification

On February 21, 2013, petitioner filed a "motion for clarification."  Dckt. No. 53.
Therein, petitioner informs the court that he has filed a petition for writ of habeas corpus in the
Butte County Superior Court, challenging a different conviction than the conviction he
challenges in the instant petition.  *Id.* at 1-2.  Petitioner asks this court whether he may continue
with his state habeas petition "separately" from the instant petition, and whether he should "file a
motion for stay and abeyance in his current case before this court even though it is a completely
separate conviction."  *Id.* at 2.  The court construes that inquiry as a request to do so.  The
request is denied.  Rule 2(e) of the Rules Governing Section 2254 Cases in the United States
District Courts provides that "a petitioner who seeks relief from judgments of more than one
state court must file a separate petition covering the judgment or judgments of each court."
Accordingly, petitioner may not pursue his challenge to his separate conviction in the instant
action.

## IV.  Conclusion

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Petitioner's September 19, 2012 Motion for Interrogatories from Defense Counsel -
Jesus Rodriguez (Dckt. No. 47) is denied.

2.  Petitioner's September 19, 2012 motion for discovery (Dckt. No. 48) is denied.

3.  Petitioner's November 29, 2012 motion to expand the record (Dckt. No. 52) is
granted.

4.  Petitioner's February 21, 2013 motion for clarification (Dckt. No. 53) is granted, and
to that end petitioner's request to pursue his challenge to his separate conviction in the instant
action is denied.

////

////

////

1    Further, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

2    habeas corpus be denied.

3    These findings and recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5    after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

8    within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

9    *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

10   his objections petitioner may address whether a certificate of appealability should issue in the

11   event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

12   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

13   enters a final order adverse to the applicant).

14   DATED:  May 30, 2013.

15

16                        EDMUND F. BRENNAN
                          UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26