1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KENNY LYNN WARREN,                          No. 2:10-cv-2120-MCE-EFB P

12              Petitioner,

13        vs.

14   DOMINGO URIBE, JR.,                          ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
15              Respondent.

16

17        Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  He moves to set aside a judgment entered on

19   August 26, 2013, denying his petition.  That petition challenged his 2006 conviction on two

20   counts of assault on a peace officer with a semiautomatic weapon while personally discharging a

21   firearm, one count of false imprisonment by violence while personally using a firearm, one count

22   of child endangerment, and one count of possession of a controlled substance.  Among other

23   claims, petitioner sought habeas relief on the grounds that: (1) the evidence introduced at his trial

24   was insufficient to support his convictions for assault on a peace officer; (2) he received

25   ineffective assistance of trial counsel; and (3) the prosecutor committed misconduct in

26   introducing testimony that he should have known was false.

27   /////

28   /////

1

Now before the court is petitioner's motion for "fraud upon the court," styled as a motion brought pursuant to Fed. R. Civ. P. 60(b)(3), (4), and (6).  For the following reasons, the court recommends that petitioner's motion be denied.[1]

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following summary of the facts underlying petitioner's convictions.

> At the time of trial, defendant and his wife P. had been married for 14 years and had been a couple for 25 years.  They have two children, including one teenaged son K.
>
> In May 2005, P. had a temporary restraining order against defendant that required he stay at least 100 yards away from her and move out of their apartment.  In early June 2005, the court dissolved the restraining order because neither defendant nor P. appeared at a court hearing.  Still, P. changed the locks on the apartment because she and defendant were having marital problems.
>
> On June 13, 2005, K. woke P. to tell her there was a broken window in the kitchen.  Defendant then came into P.'s bedroom and demanded to know why she had changed the locks.  P. called 911.
>
> About 1:55 a.m. that morning, Chico Police Officer Jeff Durkin responded to a domestic disturbance call.  The dispatcher said that a male was breaking items inside the apartment and there might be a restraining order violation.  Officers Robert Ponce and Matthew Nowicki also responded to the call.
>
> Officer Durkin was the first officer to arrive at the apartment complex.  He heard a man and a woman arguing, saw a door with a broken window pane, and came across a woman (P.) in the apartment complex corridor who seemed distraught and who told the officer in a low agitated voice that "he was inside the residence breaking items and she wanted him to leave."  Officer Durkin went to the front of the apartment and through the open door saw a man (defendant) standing inside the living room.  Defendant was agitated and "moving around quite a bit."  While using profanity, he

---

[1]   Petitioner's motion for fraud upon the court was filed on August 28, 2014.  By order dated September 5, 2014, petitioner was informed that documents filed by him after the closing date of this action would be disregarded.  On September 29, 2014, petitioner filed an appeal of the September 5, 2014 order.  By order dated February 27, 2015, the Ninth Circuit Court of Appeals construed petitioner's motion as a timely request for relief pursuant to Fed. R. Civ. P. 60(b).  The court vacated the September 5, 2014 order and remanded the matter to this court for further proceedings.

refused the officer's repeated requests to come outside and talk with him about "the alleged domestic disturbance."

Officer Durkin decided to go inside the apartment and detain defendant.  When the officer stepped inside, defendant ran out of the living room.  Officers Durkin and Nowicki chased defendant down a hallway and stood at the threshold of a poorly-lit bedroom in which defendant was standing.  Defendant appeared agitated and aggressive and was in a "fighting stance" "directed towards [the officers]."  He had "his fists out in front of him and a bladed sort of stance," looking as though he was "preparing for [the officers] to engage in some kind of physical type altercation."  Officer Durkin went for his pepper spray but then heard Officer Nowicki say that he was going to use his Taser gun.  Defendant reached under his shirt for a handgun that was in the waistband of his pants.

Officer Durkin yelled "gun, gun, gun" and ran into the bathroom for cover.  Officer Nowicki retreated toward the door.  When Officer Durkin reached the bathroom, defendant fired several shots in rapid succession from the bedroom area.  Officer Durkin returned fire and radioed for help.

Officer Nowicki decided to re-enter the apartment with Officer Ponce.  As they ran inside, defendant fired directly at them from the bedroom.  Both officers "hit the ground."  Officer Nowicki fired four shots, temporarily stopping defendant's fire.  Officer Nowicki pointed a flashlight toward the bedroom door.  Defendant fired another shot toward the officers.

Meanwhile, K. escaped from the apartment through a window.  Not realizing K. had escaped, defendant called out to K. and when his son did not respond, defendant yelled at the officers that they had killed K.  Defendant told them to "'Bring it on,'" because he had "'two more clips.'"  All three officers "'hunkered down.'"

Officer Durkin, who still was in the bathroom, struck up conversation with defendant, who remained in the bedroom.  When the officer told defendant that his son was okay, defendant and Officer Durkin developed a "rapport."  During their four-hour conversation, defendant told the officer he would free him in exchange for a beer or soda.  The officers told defendant they could not do the exchange "right then."

Eventually, a hostage negotiation team was called in, tear gas deployed, and Officer Durkin was able to escape by "thr[owing] [him]self outside the window."  After a long struggle, defendant was detained.

ECF No. 40-1 at 1-5.

One of the claims raised by petitioner in his habeas petition was that his trial counsel rendered ineffective assistance in failing to effectively cross-examine Officer Nowicki about his trial testimony that petitioner was "standing in the bedroom facing [the two officers] in the

doorway."  ECF No. 1 at 44; *see also* Reporter's Transcript on Appeal (RT) at 272.  Petitioner argued that this testimony was inconsistent with a police report contained in the record which quotes Officer Nowicki as saying that he saw petitioner "turned away from him" when he first saw him in the bedroom, but that he then "turned to face" the officers.  ECF No. 1 at 44; Clerk's Transcript on Appeal (CT) at 193.  Petitioner argued that it was "exactly at this point, while petitioner was facing away from these officers that he was shot first from behind, through both of his legs, by Officer Durkin."  ECF No. 1 at 44.  Petitioner argued that it was crucial to elicit the information that Officer Nowicki initially told investigating police officers that petitioner was facing away from him when he first encountered him, because this would bolster petitioner's defense that he was shot from behind and that he shot back at the officers only in self-defense.  ECF No. 45 at 11.  Petitioner argued, "this statement was crucial because petitioner has two gunshot wounds to the back of his legs and this is exactly when he received those wounds."  *Id.*  Petitioner also argued that cross-examination on this subject was relevant to impeach Officer Nowicki's credibility.  ECF No. 1 at 44.

In another claim raised in his habeas petition, petitioner claimed that his trial counsel rendered ineffective assistance in failing to impeach Officer Durkin with the inconsistency between his testimony at the preliminary hearing that he didn't remember whether he had anything in his hands when he first made contact with petitioner, and his trial testimony wherein he stated that he did not have anything in his hands when he first made contact with petitioner.  *Id.* at 45.  *See* CT at 58, RT at 177.  Petitioner compares Durkin's testimony with the preliminary hearing and trial testimony of Officer Nowicki wherein Nowicki stated Officer Durkin told petitioner "there's going to be a lot more pointed at you if you don't come out and deal with the issue."  ECF No. 1 at 45.  *See* CT at 84, RT at 265.  Petitioner argued that all of this testimony implied that Officer Durkin had a gun in his hand when he first approached petitioner, and that this provides support for petitioner's defense that Officer Durkin shot petitioner before petitioner shot him.  In the traverse, petitioner argued that the above-described testimony makes it "obvious" that officer Durkin "was pointing his weapon at petitioner."  ECF No. 45 at 12.

/////

4

1     In another claim raised in his habeas petition, petitioner argued that his trial counsel

2   rendered ineffective assistance in failing to tell the jury in his opening statement "and/or" during

3   closing argument that petitioner was "shot first by officers from behind," and to support that

4   argument with evidence that petitioner's "entry wounds" were to "the back of both his legs."

5   ECF No. 1 at 48.  Petitioner contended that this argument "would have changed the verdict in

6   petitioner's favor." *Id.*[2]

7     In another claim raised in his habeas petition, petitioner argued that his trial counsel

8   rendered ineffective assistance in failing to introduce into evidence two shell casings that were

9   found under some furniture in the bedroom of petitioner's apartment after the authorities

10   concluded their crime scene investigation.  *Id.* at 49.  He argued that these shell casings were ".40

11   caliber" and that, because of where they were found, they would have "proven that Officer

12   Durkin shot petitioner at the bedroom doorway, and that Durkin fired two more shots than he

13   testified to."  *Id.*  Petitioner explained in the traverse that he saw these shell casings when they

14   were smuggled into the prison by his former wife.  ECF No. 45 at 18.

15     Petitioner also claimed in his habeas petition that his trial counsel rendered ineffective

16   assistance in failing to utilize an expert witness on ballistics to demonstrate that petitioner was

17   shot from behind at close range by Officers Durkin and Nowicki.  ECF No. 1 at 61.  Petitioner

18   argued that his trial counsel should have retained a ballistics expert to test the powder burns on

19   his clothing and the bedroom door in order to establish that petitioner was shot by police officers

20   before he shot them, that the officers shot immediately instead of attempting to use non-lethal

21   force first, and that petitioner was actually the victim of a crime and not the perpetrator of a

22   crime.  *Id.* at 61, 65.  Petitioner asserted that: (1) Officers Durkin and Nowicki employed pepper

23   spray and a taser gun, even though he had not initiated any physical contact with the officers; (2)

24   _____

25         [2]   A review of the state court record reflects that petitioner's trial counsel did argue in his
   closing argument that the officers had their guns out from the beginning of the incident and fired

26   first, notwithstanding the officers' testimony to the contrary.  *See* RT at 663-70.  Trial counsel
   argued that Officers Nowicki and Durkin were not telling the truth when they testified they did

27   not shoot petitioner first, and that petitioner was merely "defending himself" against the officers.
   *Id.* at 663-69.  Counsel argued, "They shot at him with a gun and he shot back to defend himself."

28   *Id.* at 670.

1    he was shot by the officers from behind; (3) he responded by pulling out his own gun and

2    shooting back; and (4) he was "facing away from the officers when he was shot first, by officers,

3    from behind." *Id.* at 65.  Petitioner argued that he was "the actual victim of an assault with a

4    deadly weapon, by Chico Police Officers Durkin and Nowicki." *Id.* at 57-58.

5         Petitioner also claimed in his habeas petition that the prosecutor committed misconduct in

6    eliciting the testimony of Officers Durkin and Nowicki, knowing that their testimony was false

7    and was simply an attempt to cover up what actually happened at his apartment.  ECF No. 1 at

8    66-70; ECF No. 45 at 27.  Among other things, petitioner argued that "any reasonable prosecutor"

9    would have known that Officers Durkin and Nowicki were "committing perjury" when they

10   testified that Officer Durkin "did not have a gun in his hand and pointed at petitioner at the front

11   door to his residence before making entry, among other things."  ECF No. 45 at 29.  Petitioner

12   argued that even though the prosecutor knew the correct facts, he proceeded with his case in order

13   to protect the officers from the consequences of "the wrongful shooting and unlawful entry in to

14   the petitioner's residence."  *Id.*

15        Finally, petitioner requested an evidentiary hearing on his habeas claims before this court.

16        All of these claims and petitioner's request for an evidentiary hearing were denied by the

17   district court.

18   **II. Petitioner's Rule 60(b) Motion**

19        **A. Petitioner's Arguments**

20        In the motion now before the court, petitioner argues that the judgment of conviction in

21   his criminal case--not the judgment entered in this action denying his petition--was obtained by

22   fraud.  He first argues that the prosecutor committed a "fraud upon the court" when he failed to

23   introduce evidence at the preliminary hearing that petitioner was "shot from behind" by the police

24   officers.  ECF No. 75 at 1, 2.  Petitioner notes that the only mention of the location of his gunshot

25   wounds occurred on the second day of trial, when the parties stipulated to the admission into

26   evidence of photographs taken earlier that day, which showed bullet wounds on the backs of

27   petitioner's legs.  *Id.* at 3; *see* CT at 409-410, 589.  Petitioner argues this evidence should have

28   been presented at the preliminary hearing.

1    Petitioner also argues his trial counsel committed a "fraud upon the court" in failing to

2    question any trial witnesses about his "being shot from behind" or to "present evidence and argue

3    that petitioner was shot from behind by police officers."  ECF No. 75 at 2.  Petitioner faults his

4    trial counsel for arguing that he was defending himself against pepper spray and a taser.  *Id.*  He

5    contends counsel should have argued petitioner was defending himself from gunshots.  Petitioner

6    argues that his counsel and the prosecutor failed to "focus[] on the material exculpatory evidence

7    that petitioner was shot from behind first by police officer[s]."  *Id.*

8    Petitioner also argues that his trial counsel and the prosecutor failed to properly question

9    the prosecutor's "trajectory expert" and "expert D.O.J. criminalist" about the trajectory of bullets

10   through petitioner's legs, in order to demonstrate that petitioner must have been shot from behind

11   by the officers at close ("point blank") range.  *Id.* at 3-4.  As he did in his habeas petition,

12   petitioner contends this evidence would have supported his defense that he shot at the officers

13   only in self-defense and that he was therefore the victim of a crime and not the perpetrator of a

14   crime.

15   Petitioner argues his trial counsel was essentially acting in collusion with the prosecutor to

16   present false evidence to the trial court with respect to who fired the first shots.  He argues his

17   trial counsel acted as an 'agent of the state' and committed a "travesty of justice" in presenting a

18   defense that petitioner was only "defending himself against pepper spray and/or taser" instead of

19   from bullets from the officers' weapons.  *Id.* at 4, 5.  In short, petitioner argues that evidence he

20   was shot from behind "was withheld or essentially suppressed and not presented by petitioner's

21   counsel" or by the prosecutor at his trial.  *Id.* at 7.  Petitioner also argues that the failure of

22   respondent to alert this court in connection with his federal habeas petition to evidence that he

23   had bullet wounds on the back of his legs constituted a "fraud" upon this court.  *Id.*

24   Petitioner further argues that his trial counsel and the prosecutor committed a "fraud upon

25   the court" in suppressing, or failing to introduce, pretrial statements by Officer Nowicki to the

26   effect that petitioner was initially turned away from the officers when they first saw him and that

27   Nowicki did not see a gun in petitioner's hand.  *Id.* at 5.  Petitioner argues these statements would

28   /////

1    have demonstrated that petitioner must have been shot "from behind while he was turned facing

2    away from the officers before anything was in his hands." *Id.*

3         Petitioner also repeats claims he made in his habeas petition that his trial counsel rendered

4    ineffective assistance, which petitioner describes as "fraud upon the court," when he failed to

5    have two shell casings and one bullet fragment, which were found by his wife after the shooting

6    incident, introduced into evidence and tested by a "ballistics expert." *Id.* at 6.  Petitioner argues

7    such testing would have supported his claim that he was "shot from behind."  He also argues this

8    court erred in suggesting these shell casings came from petitioner's weapon. *Id.* at 6-7.

9         Petitioner contends that all of the above-described instances of  "fraud upon the court"

10   prevented him from "fully and fairly presenting his case." *Id.* at 7.  He argues that the actions of

11   the prosecutor, his trial counsel, and respondent's counsel in suppressing this information

12   rendered it impossible for the trial court and this court to "perform in the usual manner its

13   impartial task of adjudging cases that are presented for adjudication." *Id.* at 5.  Petitioner argues

14   trial counsels' actions in failing to "use the fact that petitioner was shot twice from behind" were

15   "unreasonable" and not "tactical." *Id.*  Petitioner also argues that respondent's counsel committed

16   a "fraud" on this court in taking the position in his answer to petitioner's habeas petition that there

17   was no evidence that petitioner was shot from behind, when there was evidence in the record that

18   he had scars on the back of his legs.  As he did in his habeas petition, petitioner requests an

19   evidentiary hearing on these claims. *Id.* at 7-8.

20         **B.  Respondent's Arguments and Petitioner's Reply**

21         Respondent argues that petitioner's Rule 60(b) motion is, in essence, a second or

22   subsequent habeas petition and is not properly brought pursuant to Rule 60(b).  He contends that

23   petitioner is simply repeating many of the same claims and arguments he presented in his habeas

24   petition. ECF No. 87 at 4.  Respondent argues that petitioner has not proved that any fraud was

25   perpetrated on any court, but is simply attempting to "re-present the discovery and counsel-based

26   claims this Court has already reviewed." *Id.*

27         In his reply, petitioner denies that his Rule 60(b) motion is a successive petition.  He

28   contends that this court was not able to address his habeas claims "on the merits" because it failed

8

1   to hold an evidentiary hearing on his claim that he was shot in the back of his legs.  *Id.*  He also

2   argues the court's failure to hold such a hearing constitutes a "defect in the integrity of the

3   proceedings and is assailable under Rule 60(b)."  *Id.* at 3.

4        Petitioner also claims the judgment against him is "void" because this court never

5   determined that he was shot "from behind."  *Id.*  He explains his arguments as follows:

6            Petitioner is attacking the integrity of his original habeas hearing in
             federal district Court and the Court's failure to reach the merits on
7            the most critical issue in Petitioner's federal application for habeas
             relief – the fact that he was attacked and shot from behind while
8            facing away from officers and unarmed.  This court never reached
             the merits of this vital issue and this violated Petitioner's Due
9            Process Rights.  Furthermore most of Petitioner's other claims that
             this Court did reach the merits on, are erroneous because they are
10           directly connected to the issue of Petitioner being shot from behind
             at point blank range, which the court <u>never</u> determined.
11

12   *Id.* at 2.

13       Petitioner argues that the facts of this case constitute an "extraordinary circumstance"

14   under Rule 60(b)(6) because he was "deprived of any reasonable opportunity to support his claim

15   of being shot from behind."  *Id.* at 4.  Petitioner also repeats that respondent's failure to concede

16   that he was shot from behind, in light of evidence that he had wounds on the back of his legs,

17   constituted a "fraud on the court" because it prevented this court from finding that he was shot

18   from behind by the police officers before he returned fire.  *Id.* at 5.  He argues this conduct by

19   respondent constitutes dishonesty, which is a form of fraud on the court.  *Id.*

20       Petitioner argues that his trial counsel and the prosecutor "were both fully aware that

21   Petitioner was shot twice from behind and both committed fraud on the court" in failing to bring

22   this fact to the attention of the trial court and to this court.  *Id.* at 6-7.  He contends that his

23   allegations demonstrate a "carefully planned scheme."  *Id.* at 6.  Petitioner complains that he has

24   never received a fair hearing in any court because it was never established that he was "shot from

25   behind."  According to petitioner, this situation resulted from deliberate acts by his trial counsel,

26   the prosecutor, and respondent's counsel.

27   /////

28   /////

**C.  Applicable Law**

Rule 60(b) provides for relief from a judgment or order on the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).  This rule, like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules."  *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005) (footnote omitted) (citing 28 U.S.C. § 2254 Rule 11 & Fed. R. Civ. P. 81(a)(2)).  A party may seek relief from judgment under this rule only in limited circumstances.  *Id.*  Motions seeking such relief are addressed to the sound discretion of the district court.  *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

To prevail on a motion pursuant to Fed. R. Civ. P. 60(b)(3), the moving party must establish that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case. *Craig v. In re M/V Peacock*, 809 F.2d 1403, 1404-05 (9th Cir. 1987).  "The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect."  *Id.* at 1405. The Ninth Circuit has held that that "a party bears a high burden in seeking to prove fraud on the court, which must "involve an 'unconscionable plan or scheme which is designed to improperly influence the court in its decision.'"  *Abatti v. Comm'r*, 859 F.2d 115, 118 (9th Cir.1988) (quoting *Toscano v. Comm'r*, 441 F.2d 930, 934 (9th Cir.1971)).  A reviewing court considers "whether the integrity of the judicial process was itself harmed, such that the court cannot perform its regular task of fairly adjudicating disputes."  Examples typically involve "a scheme by one party to hide a key fact from the court and the opposing party."  *Id. Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir. 2015).  *See also Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics*

10

1   *Am., Inc.*), 926 F.2d 912, 916 (9th Cir. 1991) (defining "fraud upon the court" as "that species of

2   fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the

3   court so that the judicial machinery cannot perform in the usual manner its impartial task of

4   adjudging cases that are presented for adjudication").

5         Under Rule 60(b)(4) of the Federal Rules of Civil Procedure, the Court "may relieve a

6   party . . . from a final judgment, order, or proceeding" if the Court finds that the "judgment is

7   void." Fed. R. Civ. P. 60(b)(4). A judgment is void only if the court that rendered it lacked

8   subject matter jurisdiction or lacked jurisdiction over the parties, or if the court acted in a manner

9   inconsistent with due process. *Tomlin v. McDaniel*, 865 F.2d 209, 210 (9th Cir. 1988) (overruled

10  on other grounds as stated in *Phelpe v. Alameida*, 569 F.3d 1120, 1132 (9th Cir. 2009). A

11  judgment is not void under Rule 60(b)(4) because of an error of law. *Id.* at 210; *United States v.*

12  *Holtzman*, 762 F.2d 720, 724 (9th Cir.1985) ("A judgment is not void merely because it is

13  erroneous.") (citation omitted).

14        "Judgments are not often set aside under Rule 60(b)(6)." *Latshaw v. Trainer Wortham &*

15  *Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006). The Ninth Circuit has observed that:

16          Rule 60(b)(6) has been used sparingly as an equitable remedy to

17          prevent manifest injustice. The rule is to be utilized only where
        extraordinary circumstances prevented a party from taking timely

18          action to prevent or correct an erroneous judgment.

19  *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). To obtain

20  relief under Rule 60(b)(6), "a party must demonstrate extraordinary circumstances which

21  prevented or rendered him unable to prosecute his case." *Lal v. California*, 610 F.3d 518, 524

22  (9th Cir. 2010) (citation and internal punctuation marks omitted). Rule 60(b)(6) is reserved "only

23  [for] truly 'extraordinary circumstances.'" *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011).

24  *See also Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) (Courts are directed to grant relief under

25  Rule 60(b)(6) only in "extraordinary circumstances where, without such relief, an extreme and

26  unexpected hardship would occur.") (citing *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir.

27  1993)). Rule 60(b)(6) "requires a showing of extraordinary circumstances that justify reopening a

28  judgment." *Pizzuto*, 783 F.3d at 1176.

In *Gonzalez*, the United States Supreme Court held that a self-styled Rule 60(b) motion that includes new claims or seeks to present new evidence in support of existing claims should be construed as a successive habeas petition and not as a Rule 60(b) motion. The court noted that a purported Rule 60(b) motion "can also be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* at 532. *See also United States v. Buenrostro*, 638 F.3d 720 (9th Cir. 2011) (Rule 60(b) motion, in which petitioner sought to bring a new claim of ineffective assistance of counsel, construed as a successive petition). The court in *Gonzalez* recognized, however, that a "defect in the integrity of the federal habeas proceedings," such as "fraud on the habeas court," might justify reopening a habeas petition under Rule 60(b). *Id.* at 532 & n.5.

Following *Gonzalez*, the Ninth Circuit has explained that "a legitimate Rule 60(b) motion 'attacks . . . some defect in the integrity of the federal habeas proceedings,' while a second or successive habeas corpus petition 'is a filing that contains one or more claims.'" *Jones v. Ryan*, 733 F.3d 825, 834 (9th Cir. 2013). On the other hand, "motions that allege fraud on the federal habeas corpus court . . . are properly brought under Rule 60(b)." *Pizzuto*, 783 F.3d at 1176.

**D. Analysis**

After a careful review of petitioner's Rule 60(b) motion and reply brief, it appears to this court that petitioner is essentially repeating many of the same arguments he made in connection with his habeas petition, to wit: that the prosecutor committed misconduct and his trial counsel rendered ineffective assistance in failing to utilize existing evidence to demonstrate that petitioner was "shot from behind" by police officers before he shot back in self-defense. Petitioner's arguments appear to be in the nature of an appeal of the district court's ruling on his habeas motion. However, a Rule 60(b) motion may not be utilized to "bring the entire underlying judgment up for review," *Harmon v. Harper*, 7 F.3d 1455, 1458 (9th Cir. 1993), and cannot be used as a substitute for appeal. *Title v. United States*, 263 F.2d 28, 31 (9th Cir. 1959) ("Rule 60(b) was not intended to provide relief for error on the part of the court or to afford a substitute

1    for appeal"); *Plotkin v. Pacific Telephone and Telegraph Co.*, 688 F.2d 1291, 1293 (9th Cir.

2    1982) (affirming district court's denial of rule 60(b) motion because "[l]egal error does not by

3    itself warrant the application of 60(b)").

4        Petitioner also appears to be attempting to raise additional claims of ineffective assistance

5    of trial counsel and prosecutorial misconduct that were not contained in his habeas petition.  To

6    the extent petitioner is raising additional claims in the instant motion, the motion is a successive

7    habeas petition.  Petitioner may not prosecute a successive habeas petition until he moves in the

8    United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to

9    consider the application pursuant to 28 U.S.C. § 2244(b)(3).[3]  *Gonzalez*, 545 U.S. at 531 ("using

10   Rule 60(b) to present new claims for relief from a state court's judgment of conviction – even

11   claims couched in the language of a true Rule 60(b) motion – circumvents AEDPA's requirement

12   that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly

13   discovered facts"); *Thompson v. Calderon*, 151 F.3d 918, 921 (9th Cir. 1998) ("In most cases

14   when the factual predicate for a Rule 60(b) motion also states a claim for a successive petition

15   under 28 U.S.C. § 2244(b), as it does in this case, the Rule 60(b) motion should be treated as a

16   successive habeas petition").  Thus, it appears that many, if not all, of petitioner's arguments are

17   more appropriately raised in an appeal or a second habeas petition.

18       Assuming arguendo that petitioner's motion is properly brought pursuant to Fed. R. Civ.

19   P. 60(b), he is not entitled to relief.  Petitioner's arguments involve acts of alleged "fraud"

20   committed by the prosecutor and counsel at his state court trial proceedings, not in the proceeding

21

22   [3]   Title 28 U.S.C. § 2255(4) provides, in part, that:

23           A second or successive motion must be certified as provided in
             section 2244 by a panel of the appropriate court of appeals to
24           contain - -

25           (1) newly discovered evidence that, if proven and viewed in light of
             the evidence as a whole, would be sufficient to establish by clear
26           and convincing evidence that no reasonable factfinder would have
             found the movant guilty of the offense; or

27           (2) a new rule of constitutional law, made retroactive to cases on
             collateral review by the Supreme Court, that was previously
28           unavailable.

1    leading to the judgment denying his habeas petition.  Because petitioner is challenging a

2    judgment from this court, Rule 60(b) would provide relief only if petitioner demonstrates that

3    there was a fraud committed on this court, not the state court.  *Pizzuto*, 783 F.3d at 1180.[4]  With

4    respect to the proceedings before this court, petitioner argues that the court was never informed

5    that the trial record included photographs that showed petitioner had bullet wounds on the backs

6    of his legs.  He faults respondent for taking the position in his opposition to the habeas petition

7    that there was no evidence petitioner was shot from behind, when there was "solid proof in the

8    record."  ECF No. 75 at 7.  He appears to be arguing that respondent's counsel knew, but failed to

9    inform this court, that petitioner was "shot from behind" and, in particular, failed to direct the

10   court's attention to the photographs introduced into evidence at his trial showing wounds on the

11   back of his legs.

12        In his habeas petition, petitioner did not direct this court's attention to the photographic

13   exhibits introduced at his trial.  However, he argued throughout his habeas petition that he was

14   shot from behind.  He also informed this court that he had wounds on the backs of his legs.  The

15   court was thus well aware that this argument was an important part, and even the centerpiece, of

16   petitioner's habeas allegations.  In the May 30, 2013 findings and recommendations, this court

17   specifically noted that petitioner's trial counsel argued in his closing argument that the officers

18   had their guns out from the beginning of the incident and fired first, notwithstanding their trial

19   testimony to the contrary.  ECF No. 54 at 34.  The federal court was fully aware of petitioner's

20   argument that the evidence showed he was shot from behind, and that he shot back in self-

21   defense.  Petitioner was not prevented from presenting his case to this court simply because

22   /////

23   /////

24

25        [4]   In any event, the allegations of fraud are specious.  The fact that petitioner had bullet
     wounds on the backs of his legs was known to the prosecutor, petitioner's trial counsel, and the
26   trial judge.  As noted by petitioner, a stipulation was entered into by the parties allowing the
     introduction into evidence of photographs of petitioner's wounds, and the prosecution
27   investigator described the nature of those wounds on the record.  CT at 410-13.  Accordingly,
     there was no "fraud" on the trial court in withholding evidence that petitioner had bullet wounds
28   on the backs of his legs.

1   neither petitioner nor respondent discussed or highlighted the photographic exhibits.  Nor was the

2   federal court prevented from reaching "the merits" of petitioner's habeas claims or unable to

3   perform its task of fairly adjudicating petitioner's claims.

4          Petitioner has failed to meet his "high burden" to show entitlement to relief under Rule

5   60(b)(3).  There is no evidence that the judgment in this case was "unfairly obtained" or that

6   respondent's failure to highlight evidence showing petitioner sustained wounds on the backs of

7   his legs during the altercation was an "unconscionable plan or scheme which is designed to

8   improperly influence the court in its decision."  *Craig*, 809 F.2d at 1404; *Abatti*, 859 F.2d at 118.

9   At most, respondent's failure to cite this evidence was a "garden-variety nondisclosure," which

10  does not entitle petitioner to relief from judgment.  *See Piaauto*, 783 F.3d at 1181.  The court

11  notes, in this regard, that "the state's constitutional obligation to disclose exculpatory evidence to

12  criminal defendants does not apply on collateral review."  *Id.* at 1180.

13         For all of these reasons, petitioner is not entitled to relief from judgment under Rule

14  60(b)(3) because of "fraud on the court."[5]  Petitioner has also failed to show that the judgment of

15  this court is "void" or that this case presents "exceptional circumstances."  Thus, petitioner is not

16  entitled to relief pursuant to Rule 60(b) (4) or (6).

17  **III.  Other Matters**

18         **A.  Motion to Amend The Rule 60(b) Motion**

19         On April 13, 2015, petitioner filed a document entitled "Motion to Amend- Motion under

20  Rule 60(b)(3) Fraud Upon the Court."  ECF No. 86.  In that document, petitioner requests that his

21  Rule 60(b)(3) motion also include requests for relief under Rules 60(b)(4) and (6).  This court

22  construed petitioner's motion for relief from judgment to include arguments based on Rules

23  _____

24         [5]  Even if respondent had alerted this court to photographs showing that petitioner had
     received bullet wounds in the back of his legs during the altercation at his residence, the result of
25   these federal habeas proceedings would not have been different.  For all of the reasons set forth in
     the May 30, 2013 findings and recommendations, petitioner's trial counsel did not render
26   ineffective assistance and the prosecutor did not commit prejudicial misconduct.  Moreover,
     photographs showing that petitioner received bullet wounds in the backs of his legs would not
27   have established that petitioner did not commit the charged crimes.  Contrary to petitioner's
     assertion, under the circumstances of this case evidence that he has scars on the backs of his legs
28   does not "exculpate" him.

1    60(b)(4) and (6).  Accordingly, petitioner's motion to amend is granted and those arguments have

2    been considered.

3    **B.  Motion to Stay Proceedings Pending Interlocutory Appeal**

4    On August 13, 2015, petitioner filed a motion to stay this action pending the resolution of

5    his interlocutory appeal of this court's July 6, 2015 order denying petitioner's request that the

6    undersigned be recused from these proceedings (ECF No. 96).  On September 16, 2015, the U.S.

7    Court of Appeals for the Ninth Circuit dismissed petitioner's interlocutory appeal for lack of

8    jurisdiction.  Accordingly, the motion to stay is moot.

9    **C.  Motion for Recusal**

10   On September 28, 2015, petitioner filed another, nearly identical, motion requesting

11   recusal of the undersigned because of rulings the undersigned has made in this action.  ECF No.

12   100.  Title 28 U.S.C. § 455 requires recusal if the judge's alleged bias or prejudice "stems from

13   an extrajudicial source and not from conduct or rulings made during the course of the

14   proceedings."  *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1988).  "A

15   judge's previous adverse ruling alone is not sufficient bias."  *Mayes v. Leipziger*, 729 F.2d 605,

16   607 (9th Cir. 1984).  Petitioner's request for recusal is based on his disagreement with rulings

17   made during the course of these proceedings in this court, and not from any extrajudicial source.

18   Therefore, the request for recusal is denied.

19   **D.  Request for Judicial Notice**

20   On May 26, 2015, petitioner filed a document entitled "Request for Judicial Notice of

21   Adjudicative Facts – Under Federal Rules of Evidence – Rule – 201" ECF No. 91.  Therein,

22   petitioner asks this court to take judicial notice of the following:

23             (1) that claim No. 9 in Petitioner's application for federal habeas
              corpus relief was ineffective assistance of Appellate Counsel for
24            failing to raise I.A.C. claim against trial counsel on the issues that
              are now pending before this court; and No. (2) that the entry
25            wounds to the back of Petitioner's legs, described in the stipulation
              at C.R.T. pages 409-413 establishes that Petitioner was shot from
26            behind while facing away; and No. (3) that Officer Nowicki stated
              in his interview (See C.T. page 193) less than two days after the
27            incident that "the suspect was turned away from them (officers)
              when he (Nowicki) first saw him (suspect) in the bedroom."  And
28            that this is consistent with Petitioner being shot from behind while

facing away.  And that his interview statement clearly conflicts with his trial testimony on this material fact.  At trial his (Nowicki's) testimony was that Petitioner "was facing him in a bladed stance with his fists in front of him."  - When he arrived at the bedroom door; and No. (4) That the entry wound (see CRT page 413) under "the crease behind the left knee" and the "exit wound lower by his (Petitioner's) ankle." establishes a very steep downward trajectory only achievable at near or point blank range, which conflicts with officer's testimony of not having a gun in his hand or firing it at the bedroom doorway; and No. (5) that Petitioner's 15 year old son gave the following statement the morning after the incident.  (See C.T. page 140) Q.  And he told you that he heard his dad say something to the effect, quote "why do you have a gun out and pointed at me," correct?  A.  Yes. – the relevance of this is that it is consistent with the officer still having his gun in his hand when he arrived at the bedroom doorway when Petitioner was shot while facing away, from behind.  The officer also claimed he did not have a gun pointed at Petitioner.

*Id.* at 2.

Rule 201 of the Federal Rules of Evidence sets forth the information that can be judicially noticed.  Specifically, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The "facts" suggested by petitioner do not fall within the category of facts which may be judicially noticed.  They are, rather, the same arguments petitioner has made repeatedly in his habeas petition and in subsequent filings in this case.  Some of these "facts" are also subject to reasonable dispute and are, in fact, disputed by the respondent.  Accordingly, the court will not take judicial notice of the information offered by petitioner.  The court has, however, read the submitted information and concludes that even if judicially noticed, the information offered would not aid petitioner or establish that he is entitled to relief on his habeas petition or his Rule 60(b) motion.

**IV.  Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that:

1.  Petitioner's April 13, 2015 "Motion to Amend" (ECF No. 86), requesting that petitioner's Rule 60(b)(3) motion also include requests for relief under Rules 60(b)(4) and (6), is granted;

2. Petitioner's August 13, 2015 motion to stay this action pending the resolution of his interlocutory appeal (ECF No. 96) is denied as moot;

3. Petitioner's September 28, 2015 motion to recuse the undersigned (ECF No. 100) is denied; and

4. Petitioner's May 26, 2015 "request for judicial notice" (ECF No. 91) is denied.

Further, IT IS HEREBY RECOMMENDED that petitioner's motion for "fraud upon the court" pursuant to Fed. R. Civ. P. 60(b) (ECF No. 75) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  December 7, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE